This practically operated to place the child, who was a boy about five years of age, with the mother's parents in the city of New York during that portion of the year when the schools were in session, and placed him with his paternal grandfather during his vacations. The decree, as modified, requires the boy to stay with the mother one half of the year, and to remain with the father, at the home of his father, the other half. Such a division of the year disregards entirely the child's opportunities for schooling. He is now approaching an age when a systematic and regular attendance at school is most important, and it cannot be had if the year is to be divided between New York City and Montgomery county, as the order appealed from requires. We think that in this respect the modification of the decree is a serious disadvantage to the interests of the child. The additional three months that it is thereby allowed to spend with its grandfather in Montgomery county does not overcome this disadvantage. No particular improvement in the condition of the boy is to be expected from such an arrangement.

We think the order should be reversed, with $10 costs and disbursements.

Order reversed, with $10 costs and disbursements, and motion denied.

---

(75 App. Div. 220.)

GREENWICH & J. RY. CO. v. GREENWICH & S. E. R. R. et al.

(Supreme Court, Appellate Division, Third Department. September 3, 1902.)

1. RAILROADS—EXTENSION OF LINE—STATUTES.
    Railroad Law (Laws 1890, c. 565, as amended) § 13, provides that, if it shall appear to the directors of a road that the "line can be improved" thereby, they may, by a two-thirds vote, etc., alter or change the route of the road or its termini, and locate it or its termini in a county adjoining either of those mentioned in its articles of association. Section 59 provides that new roads shall not be constructed except on a certificate of public convenience and necessity by the railroad commissioners. *Held*, that the statute does not authorize the extension of a road beyond one of its present terminals, and into another county, no change being contemplated in the existing line, and the only "improvement" contemplated being an increase of business.

2. SAME—CONSTRUCTION OF ROAD—CONDEMNATION—FILING MAP.
    Railroad Law (Laws 1890, c. 565) § 6, provides that a steam railroad, before constructing any part of its road in any county, shall file a map and profile of the route adopted in the county clerk's office, properly certified, etc.; that written notice shall be given all occupants of lands over which the route is so designated, etc.; that any occupant may within 15 days institute proceedings to alter the route, when commissioners may be appointed, and a hearing had; and that no condemnation proceedings shall be had until the required notices have been given. *Held* that, where a railroad has failed to give notice of a proposed route to all the interested occupants, there is no authority for the appointment of commissioners or for condemnation proceedings.

3. SAME—OBJECTION TO PROCEEDINGS.
    Occupants served with notice may defend against condemnation proceedings because of the failure to serve all the owners.
    Smith, J., dissenting.

Appeal from trial term.

Application by the Greenwich & Johnsonville Railway Company against the Greenwich & Schuylerville Electric Railroad and others for a condemnation of property. From a judgment dismissing the petition, petitioner appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

C. C. Van Kirk, for appellant.

Thomas O'Connor, for respondents.

PARKER, P. J. The plaintiff was organized as a steam railroad company prior to 1899, and since that time has been operating its road from Johnsonville, its southern terminus, in the county of Rensselaer, to Greenwich, its northern terminus, in the county of Washington. On June 29, 1901, it resolved by a vote of two-thirds of its directors to alter and change its line and terminus by extending its road from Greenwich to Schuylerville, in the county of Saratoga, a distance of about seven miles. On July 1st it filed in the proper office a certificate of such extension, and a survey and map of the line as so extended, and thereupon claimed, and now insists, that by such action it has, by force of the provisions of section 13 of the railroad law (chapter 565 of the Laws of 1890, as amended), acquired the right to build an additional road along and upon such extended line, and to condemn all lands necessary for that purpose. In this proceeding it seeks to condemn from these defendants lands needed for its right of way. The issues raised by their answer were referred to a referee. After a hearing before him, its petition was dismissed, and from the order or judgment entered on such decision this appeal is taken.

Upon the hearing many objections were taken by the defendants, some of which present important and interesting questions. There are two parcels of land described in the petition. The plaintiff claims that, as to the parcel first described, the defending company did not acquire the ownership thereof until after the plaintiff had filed its map and profile and served notice thereof upon Addie B. Sprague, the then owner, and that as to it the defendant therefore acquired it subject to the plaintiff's right to condemn the same. Rochester, H. & L. R. Co. v. New York, L. E. & W. R. Co., 110 N. Y. 128, 17 N. E. 680. That, as to the parcel secondly described in such petition, although the defending company owns the land so sought to be taken, it is neither held nor needed by it for the purposes of its incorporation, and that hence it is subject to be taken in invitum from such company, the same as if it were a natural person. To this the defendant replies that under the last provision of section 7 of the railroad law no lands held or owned by a railroad company can be condemned by another railroad company; that the only easement or interest it can now acquire in another's lands is the right to cross its track or right of way, as provided for by section 12; and that it may not do that in such a manner as to affect any

depot grounds or gravel pit. It further claims as a matter of fact that not only both parcels of land were acquired by it in 1899, but also that both parcels are necessary for the purposes of its incorporation. It is also strenuously urged by the defendant that it does not appear that the taking of such land by the plaintiff is a public necessity, and hence that it may not maintain these proceedings. The referee has found with the defendant on all of these questions. It seems to me that, if the plaintiff acquired under section 13 any right to extend its road over the seven miles contemplated, such lands as it sought to acquire for the purpose of its right of way were necessary, and the finding of the referee in respect thereto was error. And as to the questions of fact whether the defendant acquired title to the parcel first described by the deed taken from Addie B. Sprague in 1899, and as to whether that portion of the 35 acres acquired by it in 1899 which is sought to be condemned in the parcel secondly described can be fairly deemed to be held and needed by it for gravel pits, depots, or for any other purposes necessary to its incorporation, within the rule as laid down in Re Rochester, H. & L. R. Co., 110 N. Y. 119, 17 N. E. 678, I have very grave doubts. But I do not examine and decide those questions, because there are two principal reasons why, in my judgment, the referee's decision must be sustained, even though he was in error as to all of those other questions. Evidently the plaintiff must have acquired the right to construct a railroad from Greenwich to Schuylerville before it can maintain this proceeding. Does section 13, upon which it relies, give it that right? Do its provisions enable a railroad company, which, under its articles of association, has located its termini, constructed its road between them, and for upwards of 20 years has operated it as so fixed and located, to extend its road and establish new termini at any point it may desire in an adjoining county? That section provides, substantially, that, if it shall appear to the directors "that the line can be improved thereby," they may, by a two-thirds vote, etc., alter or change the route of its road or its termini, and locate it, or any part of it, or its termini, in a county adjoining either of those mentioned in its articles of association. It is to be noticed that the change may be made when it appears that the line will be improved. In the case before us no change whatever in the line between Johnsonville and Greenwich is contemplated. The line and those termini are to remain as they have ever been. The only change contemplated is to select a new northern terminus, seven miles beyond Greenwich, and build a new road to it. And the only possible improvement to the "line" that can be expected, is that the business which will be transacted over it will be increased. Nothing in the "line" itself is expected to be improved. The business which the road will thereafter transact it is expected will be. I am of the opinion that such a change, for such a purpose, is not authorized by that section. Even though a change under that section may be made after the road is fully completed and in operation, yet it must be one made for the purpose of benefiting the line contemplated in the articles of association, and the improvement intended must have

reference to some feature of the line itself, such as an easier grade, or a lessened cost of construction or of maintenance. The change intended by such section was not a mere reaching out into new territory for the purpose of increasing the business of the road. The plaintiff's road is well situated to illustrate the extent to which a company could, by mere resolution, enlarge its franchises, if section 13 gives the rights for which the plaintiff contends. Under its articles of association it acquired the right to operate a railroad from Johnsonville to Greenwich, some 15 miles in length. Under its construction of section 13 it may build an additional line from Greenwich to Whitehall, in the county of Washington, and from Johnsonville to the City of Hudson, in the county of Columbia, and thus operate a new road more than six times as long as its original line, and through a thickly peopled part of the state, where it would parallel several other lines. In view of the pronounced policy of the state that new roads shall not be constructed except on the certificate of public convenience and necessity required by the fifty-ninth section of the railroad law, I am of the opinion that such a construction was not intended and should not be given to section 13. The plain purpose on the part of the plaintiff to extend its business, rather than to alter its line for the purpose of bettering it, is apparent. Such a change section 13 does not, in my judgment, authorize it to make, and hence it has acquired no right to build this new line, or to condemn any lands for that purpose.

But, however that may be, there is another particular in which the plaintiff is premature in instituting these proceedings. Section 6 of the railroad law provides that a steam railroad company, before constructing any part of its road in any county, shall file a map and profile of the route adopted by it in any county, in the county clerk's office, properly certified, etc. Written notice shall then be given to all actual occupants of the lands over which the route is so designated of such filing, and that the route passes over their lands. Any such occupant or owner may, within 15 days after receiving such notice, institute proceedings to alter the route as so designated by the company. In such a proceeding the court may appoint commissioners. An inquiry before them may be had, and the proceeding may result in a change of the line, not only upon the lands of the applicant, but elsewhere in the county. This section is designated, "Location of Route," and its purpose is evident. It proceeds upon the theory that the route, as located by the company, should not be controlling upon the parties through whose lands it passes; that all such owners in the county should have an opportunity to be heard upon the question whether the line so selected is a fair and just one, not only to the company, but to those upon whose lands it is to be a burden. Therefore all such parties, except those who have transferred their lands to the company, must be notified; and it has been held that until all are so notified, and the 15 days have fully expired, the appointment of commissioners on the application of any owner is prematurely made. In re Long Island R. Co., 45 N. Y. 364. In the case before us the plaintiff has recognized its liability

to proceed in the location and construction of this new line in the manner required by the railroad law, and has filed the map and profile of its new route, and caused it to be certified as required by section 6; but it is not claimed that notice of such filing has been given to any other of the owners through whose lands the line passes in Washington county than the answering defendants herein. The map on file shows that there are many other such persons; but no proof is made, nor is it really claimed by the plaintiff, that all of the persons which the section requires to be so modified, have as yet been served with such notices. It claims, however, that, inasmuch as the defendants received the notice and omitted to apply for a change of the route, they cannot now defend against these proceedings because others have not received it. But this claim is inaccurate. It might be that the line would be so changed upon the application of another that the precise lands that the company sought to take from an owner would no longer be needed. In the case before us probably that situation does not arise; but the section is broad enough to cover every case, and plainly a company is not in a position to take lands in invitum until its line is so finally fixed and located through a county that by no peradventure would lands so taken become unnecessary. This view is distinctly held in Re Niagara Falls & W. Ry. Co., 46 Hun, 94, and the able and elaborate opinion there contained renders a more extended discussion of the question unnecessary. Moreover, the section itself in express terms provides that no proceedings to condemn any lands in any county shall be instituted by the company until 15 days after the notice required by that section (that is, the notice on all occupants, etc.) has been given. Such service is a condition precedent to the institution of condemnation proceedings, and, it not having been made in this case, the petition was properly dismissed.

The judgment appealed from should be affirmed, with costs.

KELLOGG, J., concurs. CHASE, J., concurs in result. SMITH, J., dissents.