[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 123 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 124 
The petitioner alleged its due incorporation, the necessary subscription to its capital stock, and the payment of the ten per cent required. It further averred its need of the land sought to be condemned for the purposes of its road, and an unsuccessful effort to agree with the land owner upon the damages to be paid. The latter denied these allegations, partly upon information and belief, and the issues thus raised were tried and decided in favor of the petitioner. We need not delay over the question argued as to the burden of proof, for the petitioner established its case beyond the need of resting upon presumptions. While the evidence it gave has been somewhat criticised, there seem to be but one or two points about which the argument made demands our attention.
The principal subscription to the stock, and one essential to the required amount, was that of the Central Construction Company, the validity of whose contract is questioned on the ground that it is a foreign corporation, having no power to subscribe to the stock of a railroad company. The appellants claim upon the evidence, that the Construction Company is a corporation formed under the laws of New Jersey. Whether *Page 125 
it is in truth a partnership or joint-stock association or a corporation, is not at all certain or accurately disclosed, but, conceding its corporate character, there is still no proof of its want of power. Its charter is not shown nor the law of its organization. Its business is stated to be the construction of railroads, as its name implies, and it would be quite strange if it could not subscribe to the stock of the roads which it can build. At all events we cannot presume against its acts and the payment of $40,000 actually made upon its subscription in money and equipment that it acted beyond its power. It is not before the court, it does not deny or dispute its liability, and it is difficult to see how the land owner can raise or try the question; yet, if that be possible, no presumption of want of power can be indulged in the face of an actual subscription followed by more than ten per cent of payment.
It is claimed, however, that the cash payment of $21,000 by Chapman is not satisfactorily proved. He swears that he paid it by causing his bankers to transfer that amount of his own money on deposit with them to the credit of the petitioner. He adds that the transfer was actually made, that a receipt was given for it, that it was applied as it was paid upon the stock subscriptions and remains intact in the possession of the petitioner as a deposit to its credit upon the books of the bankers. These facts are not contradicted beyond some criticism upon the manner in which the business was done, and comment upon the absence of books and papers, the need of which might not have been anticipated. It is quite evident that we ought not, upon grounds so slight, to distrust the finding of the referee, confirmed by the court, that the required ten per cent was paid.
The appeal of the Erie Railway Company raises another and different question, founded upon the claim that under its lease from Babcock, the land owner, and by reason of the switch constructed to communicate with a brick yard, it has a prior right for a public use which the petitioner cannot invade. The latter filed its map and profile on the 13th day *Page 126 
of July, 1886, and on the seventeenth served notice of such filing upon Babcock, and in due season filed its certificates of location. On the tenth of August the Erie Company took a lease from Babcock for the term of three years of the right to lay a track across his premises toward a brick yard. The owners of that plant had made verbal applications for a switch, and on the tenth of August made a written application. That was granted with such willing promptness that the lease is dated that day, and the switch was constructed immediately, the work beginning within two or three days thereafter. It did not, however, reach the brick yard because Mrs. Emery, whose lands it was necessary to cross, refused her assent and served an injunction to prevent the intrusion on her land. The switch thus constructed was at first torn up where it crossed petitioner's line, and then replaced by the Erie and cars run upon it to defend its possession. The General Term say in their opinion that the question of priority between the two companies has been tried in a separate action and decided against the Erie, and that case is here on its own appeal.
Upon the facts disclosed, however, we are of opinion that the appellant corporation did not establish such an occupation of the switch for a public use as would bar a condemnation by the petitioner. Lands held by a corporation, but not used for, or necessary to, a public purpose, but simply as a proprietor and for any private purpose to which they may be lawfully applied, may be taken as if held by an individual owner. (Matter ofRochester Water Comrs., 66 N.Y. 418.) The need of the land sought in aid of collateral enterprises, remotely connected with the running or operating of the road, will not justify an assertion of the right of eminent domain. (Rens. Sar. R.R.Co. v. Davis, 43 N.Y. 137.) The whole subject has been recently and fully discussed in In re Niagara Falls andWhirlpool Railroad Company (108 N.Y. 375), and the limits of judicial control defined. In the case at bar the lease taken was brief and temporary, the lessor, a complaining landowner, and the lessee watching a competitor; the building of the switch so swift and prompt as to indicate *Page 127 
a design of obstruction; the purpose asserted that of convenience to the owners of a brick yard in which no public use was involved; even that purpose inchoate and barred by the refusal of Mrs. Emery, and the brick yard not even reached; the switch needless for the general purposes of the company and no such expected use asserted; and the occupation for private gain and for individual convenience. A switch may be needed for the storage of cars or making up of trains, or for access to docks, warehouses and elevators open to public use and resulting in public accommodation, but nothing of the kind is here pretended, and it is even doubtful whether its sole utility to the builders was anything other than as an obstruction. We ought not, therefore, to deem it a bar to this proceeding.
It is further objected, on behalf of the appellant corporation, that no effort was made to agree with it before the proceedings were instituted. Proof was given of an attempt to settle with the land-owner lessor, and its failure. That failure made a resort to the court and an appraisal of damages necessary, and its distribution among the different interests could not be determined until those damages were ascertained. The proof established that the strip of land sought to be taken could not be acquired by agreement, and that was sufficient without showing a negotiation with the lessee, who could not give the title and right required.
We think there was no error in the order, and that it should be affirmed.
All concur.
Order affirmed. *Page 128