Rochelle ARONOFF et al., Appellants,

v.

CITY OF DALLAS, Texas, et al.,
Appellees.

No. 7055.

Court of Civil Appeals of Texas.
Texarkana.

Sept. 2, 1958.

Rehearing Denied Sept. 23, 1958.

Nathan Rachael, Rachael & Smith, Shields, Jones & Whittington, McKool & Bader, Dallas, for appellant.

Henry Kucera, Jon H. Shurette, Chas. C. Wells, Locke, Locke & Purnell, Jess Hay, C. G. Purnell, Wayne O. Woodruff, Dallas, for appellee.

FANNING, Justice.

This is a condemnation case and the judgment of the trial court is affirmed.

Appellees, Texas Turnpike Authority and the City of Dallas, Texas, instituted this suit on November 21, 1956, to condemn a tract of land with improvements thereon located on South Industrial Boulevard in Dallas, Texas. The property involved was owned by Rochelle Aronoff and her husband, Nathan Aronoff, subject to the leasehold estates of Federal Sign Company of Texas and Davis-McPhail Electric Company. The property was condemned for the purpose of constructing thereon a part of an interchange between U. S. Highway 77, U. S. Highway 80 (Commerce Street), and the Dallas-Fort Worth Turnpike Project, which is being constructed under the auspices of the appellee Texas Turnpike Authority.

In response to the special issues submitted, the jury found to the effect that the value of the subject property, including all interests therein, amounted to $26,-389, which total sum was apportioned among the various condemnees as follows: To appellants Nathan and Rochelle Aronoff, the sum of $23,963; to the appellant Federal Sign Company of Texas, the sum of $2,426; and to the appellant Davis-McPhail Electric Company, the sum of $0. The trial court entered judgment in accordance with the verdict of the jury and the above named appellants have appealed.

■ All of the appellants challenged the right, power and authority of the Texas Turnpike Authority and the City of Dallas to condemn the subject property.

Article 6674v, Vernon's Rev. Civ. St. of Texas, known as the Texas Turnpike Authority Act, which created the Texas Turnpike Authority, declares that "the Authority is hereby constituted *an agency of the State of Texas,* and the exercise by the Authority of the powers conferred by this Act in the construction, operation and maintenance of turnpike projects shall be deemed and held to be *an essential governmental function of the State."* Sec. 3.

Section 23 of the same statute provides:

"Sec. 23. *Act Liberally Construed.* This Act, being necessary for the welfare of the State and its inhabitants, shall be liberally construed to effect the purposes thereof."

Section 8 of Article 6674v, V.R.C.S. reads in part as follows:

"Sec. 8. *Condemnation of Property.* Whenever a reasonable price cannot be agreed upon, or whenever the

owner is legally incapacitated, or is absent, unknown or unable to convey valid title, the Authority is hereby authorized, and empowered to acquire, by the exercise of the power of condemnation and in accordance with and subject to the provisions of any and all existing laws and statutes applicable to the exercise of the power of condemnation of property for public use, any land, property rights, right-of-ways, franchises, easements or other property deemed necessary or appropriate for the construction or the efficient operation of any Turnpike Project or necessary to the restoration of, public or private property damaged or destroyed; provided, however, the Authority may not condemn any land except such as will be necessary for road and right-of-way purposes. *The road and right-of-way purposes for which the Authority may condemn land, shall include the land necessary for access, approach, and interchange roads,* but shall not include any supplemental facility for other purposes. Such supplemental facilities must be constructed upon land acquired by purchase and not by condemnation. * * *" (Emphasis added.)

Section 7 of the Turnpike Act, which is Article 6674v, V.R.C.S., provides in part as follows:

"* * * The governing body of every county, city, town, political subdivision or public agency is authorized without any form of advertisement to make conveyance of title or rights and easements to any property needed by the Authority to effect its purposes in connection with the construction or operation of a Turnpike Project."

The evidence adduced clearly shows that the acquisition of the subject property was necessary to the public purposes of the appellees, City of Dallas, Texas, and Texas Turnpike Authority. The use to which the condemned property has been put is amply stated both in the pleadings and in the testimony of the witnesses, to-wit: "A freeway project which will connect said U. S. Highway 77 with said Dallas-Fort Worth Turnpike Project." We think it is also undisputed in the record that the Texas Turnpike Authority had deemed the property necessary for road and right-of-way purposes of the Dallas-Fort Worth Turnpike and that sufficient proof showing the authority of the Turnpike Authority to condemn was properly made.

It is clear from the evidence adduced that the subject land condemned together with other adjacent property, was to be used for the construction of a ramp leading from Highway 77 into Commerce Street in the City of Dallas, Texas, as a part of an interchange and connection betweeen Highway 77, which runs generally North and South, and the Dallas-Fort Worth Turnpike, which runs East and West, both of which join in the area of the subject condemned property in a complicated pattern of roadways shared by traffic of both, and that this ramp is a necessary and convenient part of that interchange, not only to permit motor vehicles to go from Highway 77 into Commerce Street, but also to prevent motor vehicles traveling South on Highway 77 from being, in the parlance of the highway engineers, "trapped" into paying a toll if the driver prefers to travel to Fort Worth on Highway 80 rather than via the Turnpike. Clearly the subject condemned property was a necessary and proper part of the interchange and approach facilities to the Dallas-Fort Worth Turnpike.

We also think that it is clear that since the subject condemned property is to be used for an interchange between Highway 77 in the City of Dallas and the Dallas-Fort Worth Turnpike and will serve both facilities, both the City of Dallas (which acquires land within the City for the construction of highways by the Texas Highway Department) and the Texas Turnpike authority are mutually and dually interested in the acquisition of the subject condemned property.

We hold that the Texas Turnpike Authority had ample right, power and authority to condemn the subject property under Article 6674v, Vernon's Ann.Civ.St., under the facts shown in the record of this case. Appellants Aronoffs' points 1 to 6, incl., appellant Federal Sign Company's points 1 to 6, incl., and appellant Davis-McPhail Electric Company's adoption of such points of said appellants, are deemed to be without merit under this record and are respectfully overruled.

■ Appellants also contend to the effect that the judgment should be reversed because the City of Dallas did not make any bona fide effort to agree with appellants on the amount of damages and that the City of Dallas did not make any offer to any of the appellants. Appellants Federal Sign Company and Davis-McPhail Electric Company further contend to the effect that the judgment of the trial court should be reversed because the Turnpike Authority did not make any bona fide effort to agree with them on the amount of damages and that the Turnpike Authority did not make any offer to them. All appellants further contend to the effect that a joint condemnation by the City of Dallas and the Turnpike Authority was not authorized by law and that the City of Dallas was not authorized by law to condemn the subject property for and on behalf of the Turnpike Authority.

Introduced in evidence was a resolution by the City Council of the City of Dallas, Texas, dated November 19, 1956. Briefly stated, this resolution sets forth the following facts in its preamble:

"1. That the Turnpike Authority was in the process of constructing a toll road between Dallas and Fort Worth, and was acquiring property for its right of way by condemnation;

"2. That certain property was needed by the Authority to connect with U. S. Highway 77 Freeway, and with other City streets, and that all the appellants were owners thereof;

"3. That the Turnpike Authority was negotiating with the owners for the purchase of this property in cooperation with the City Manager, but that all offers had been rejected;

"4. That the officials of Petitioner City of Dallas knew of these negotiations and the failure to agree, and were convinced that voluntary settlement could not be accomplished;

"5. That the property was located within the corporate limits of the City of Dallas and that it was necessary to condemn it for right of way purposes for streets within the City;

"6. That it was advisable for the City of Dallas to join with the Turnpike Authority in one proceeding to acquire the right of way necessary for the Turnpike interchange for U. S. Highway 77 Freeway and for other streets."

With these premises, the City Council then resolved that public necessity required that the City and Texas Turnpike Authority acquire the property owned by appellants for use in connection with these projects, and names each owner whose land should be acquired, and then states that a bona fide effort had been made to agree with these owners by the offer of the sum of $21,825 made by the Turnpike Authority, and ratified and confirmed by the City Council of the City of Dallas, and then authorized the City Attorney to file such suits as might be necessary to acquire title to this land.

The evidence undisputedly shows that the Turnpike Authority made a bona fide effort to agree with the appellants Aronoffs on the amounts of damages due to them and made a bona fide offer to the Aronoffs before the institution of the condemnation proceedings. The record further shows that the Aronoffs not only refused the offers but in their appearance before the Special Commissioners in Condemnation resisted and challenged the authority of the condemnors to condemn the land in question and that

they also on the trial in the County Court at Law further resisted the proceeding and challenged the authority of the condemnors to condemn the land in question. The resolution of the City Council of Dallas above referred to also states that the offer of the Turnpike Authority was ratified and confirmed by the City Council of the City of Dallas. The recitation in the resolution passed by the City Council of the City of Dallas also states to the effect that the city officials knew of the Turnpike's negotiations with the Aronoffs and were convinced that a voluntary settlement could not be made.

We think the record in this case conclusively shows that the City of Dallas complied with all of the jurisdictional prerequisites necessary to sustain the condemnation in question and that the city confirmed and ratified the bona fide effort to agree with the appellants Aronoffs made by its co-condemnor, Texas Turnpike Authority, and that the City of Dallas was not required to attempt the futile or useless act of offering the appellants Aronoffs the offer theretofore offered the Aronoffs by its co-condemnor, the Turnpike Authority.

We also hold that under the record in this case both the City of Dallas and the Texas Turnpike Authority had ample authority in law to exercise the right of eminent domain on the subject property and that it is also immaterial as far as appellants are concerned as to which authority paid for the condemned property.

■ It is well settled law that in condemnation cases where an attempt to agree upon value of the condemned land would be futile that no attempt to agree need be made. See Houston North Shore Railway Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 108 A.L.R. 1508, and authorities therein cited.

Also in Fort Worth Independent School District v. Hodge, Tex.Civ.App., 96 S.W.2d 1113, 1114, a condemnation suit, it is stated:

"Analyzing the testimony of Hodge, himself, we are driven to the conclusion that this case is 'on all fours' with those cases in which the wholesome doctrine is established that where it appears from the entire record and proceedings that the parties could not have agreed upon the amount to be paid, it is not necessary to make a formal effort to agree upon the amount.

"This doctrine is approved in the case of Clements v. Fort Worth & D.S.P. R. Co., Tex.Civ.App., 7 S.W.2d 895, which is cited and relied upon by appellee Hodge."

■ It is also our view that there is an additional reason why appellants Aronoffs' contention regarding a bona fide offer by the City of Dallas is without merit. The record shows that the appellants Aronoffs challenged and resisted the right and power of the authorities to condemn the subject property both in the hearing before the Special Commissioners in Condemnation and in the trial in the County Court at Law of Dallas County, Texas. In Jones v. City of Mineola, Tex.Civ.App., 203 S.W. 2d 1020, 1023, wr.ref., it is stated:

"In addition it has been held in a number of cases that where the owner of the land sought to be condemned makes his appearance before the special commissioners and resists the condemnation proceedings upon the merits, he thereby waives whatever lack of efforts to reach a settlement there might have been." (Emphasis added.)

The record shows that the property involved in the condemnation proceedings was owned by Nathan and Rochelle Aronoff, subject to the leasehold estates of Federal Sign Company and Davis-McPhail Electric Company.

The record undisputedly shows that appellee Texas Turnpike Authority attempted in good faith to agree with the appellants Aronoffs on the value of the property being

condemned and that the Turnpike Authority made a bona fide offer to the appellants Aronoffs prior to the institution of the condemnation proceedings. This offer was ratified and confirmed by the resolution of the City Council of the City of Dallas as heretofore detailed.

Under the record in this case there was no showing made that either the City of Dallas or the Turnpike Authority made an offer of settlement or attempted to agree on the amounts of damages with the appellants Federal Sign Company and Davis-McPhail Electric Company, prior to the institution of the condemnation proceedings. Appellants Federal Sign Company and Davis-McPhail Electric Company take the position in their briefs that by reason of this failure to negotiate or make an offer on the part of the condemning authorities the condemnation proceedings were void. Appellees in counter contention contend that where the condemnors in this case were unable, after good faith negotiations and a bona fide offer of settlement, to agree with the appellants Aronoffs, the fee owners of the condemned property, that they were not required to negotiate separately with the appellants Federal Sign Company and Davis-McPhail Electric Company, lessors of the dominant landowners Aronoffs as same would be useless and futile under the record in this case.

■ It is a generally recognized rule of · law that where there are several interests or estates in a tract of land taken by eminent domain, the proper method of fixing the value of, or damage to, each interest or estate is to determine the value of, or damage to, the interest as a whole and then to apportion the gross award among the several owners according to their respective interests. See the following authorities: 18 Am.Jur., Eminent Domain, Sec. 239; 16 Tex.Jur., Eminent Domain, Sec. 196; City of Waco v. Messer, Tex.Civ.App., 49 S.W. 2d 822, modified on other points 124 Tex. 417, 78 S.W.2d 169; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, wr.

ref., n.r.e.; United States v. 25,936 Acres of Land, 3 Cir., 153 F.2d 277; Frankfurt v. Texas Turnpike Authority, Tex.Civ.App., 311 S.W.2d 261.

Article 3264, V.A.C.S., provides in part as follows: "The party desiring to condemn the property after having failed to agree with the owner of the land on the amount of damages shall file a statement in writing with the county judge * * *". Both the statutory law of this state and the case law based thereon, requires as a prerequisite to the institution of condemnation proceedings, a bona fide attempt to agree with the owner of the property as to the value thereof, the purpose of such requirement being to eliminate unnecessary litigation and expense incident thereto.

■ Of course the appellants Federal Sign Company and Davis-McPhail Electric Company, as lessees, were owners of interests in the property condemned under the condemnation statutes (see Houston North Shore Railroad Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, and authorities cited therein), and were of course proper and necessary parties to the condemnation suit. See Nalle v. Eaves, Tex.Com.App., 5 S.W.2d 500, and authorities cited therein. However, we think it is clear that the statutes relating to eminent domain comprehend compensation for damage to property rather than for damage to persons. And of course all persons having an interest in the land taken are entitled to share in the compensation awarded according to the adjudicated values of their interests but under our view this does not alter the fact that the ultimate question, in so far as the condemnor is concerned, is the total compensation required to be paid for the property itself. Primarily the apportionment of the gross award is a matter of dispute between the fee owner and any lessees, mortgagees or other persons having interests in the condemned property. See Frankfurt v. Texas Turnpike Authority, Tex.Civ.App., 311 S.W.2d 261, 267 (and authorities cited therein), wherein it is stated:

"It may be generalized from the many authorities in the books that the statutes relating to eminent domain comprehend compensation for damage to property rather than for damage to persons * * *

"The trial court submitted Special Issues No. 4 through No. 9 which operated to apportion the gross award between the two claimant owners, Victor Frankfort and Sol Minzer, as the landowners, and W. B. Johnson as the lessee. This procedure is in accord with that outlined in 16 Tex.Jur., Eminent Domain, Sec. 196, wherein it is said:

" 'There may arise a question as to whether different estates or interests in the property are to be valued and the amount apportioned among the separate interests. The usual method of evaluating several interests in a tract taken by eminent domain is to ascertain the market value of the tract as though owned exclusively by one party. And in the absence of damages to other property not taken, this will ordinarily determine the extent of the liability of the condemnor. The amount so ascertained is then apportioned among the owners of the various interests or estates. However, separate valuation of the various interests may also be made, subject to the limitation that the total valuation shall not exceed the value of the property if it were owned by one person.'

"The rule thus stated finds support in 18 Am.Jur., Eminent Domain, Sec. 239; City of Waco v. Messer, Tex.Civ.App., 49 S.W.2d 822, modified in other particulars 124 Tex. 417, 78 S.W.2d 169; Reeves v. City of Dallas, supra; Grand River Dam Authority v. Gray, 192 Okl. 547, 138 P.2d 100.

"Then in City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 604, the rule is stated in language, perhaps more apt, as follows:

" 'The well-established general rules of eminent domain seem to be that, when a piece of property is taken, in which the ownership is divided into several interests, as between the public and owners, it is considered one estate; that the public right is exercised upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interest is entitled is no concern of the condemnor; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken; that the value of the property taken is all that the condemnor must pay, and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; and that the sum of all the parts can not exceed the whole.' "

It is our opinion under the record in this case, where the condemnors were unable to agree after a good-faith effort to do so, with the dominant landowners, the appellants Aronoffs, that the condemnors were not required to proceed in an effort to settle in separate transactions to acquire by agreement the interests of the lessees Federal Sign Company and Davis-McPhail Electric Company.

As hereinbefore stated, when an attempt to agree upon values in condemnation suits prior to institution of proceedings would be futile and fruitless, the making of a formal effort to agree is unnecessary. See Tex.Jur., Eminent Domain, Sec. 319, and Houston North Shore Railroad Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 795, supra. In the Tyrrell case, supra, there were numerous condemnees, including mortgagees and reversionary owners. The condemnor made an effort to agree with only one of the condemnees, to-wit, the Tyrrell and Garth Investment Company, and could not agree with such company.

The Supreme Court in such case held, that under the circumstances, it was unnecessary and would be futile for the condemnees to enter into negotiations with the other condemnees. We quote from the Supreme Court's opinion in the Tyrrell case as follows:

"* * * It is shown by the certificate of the Court of Civil Appeals that appellants made an effort to agree upon value with the Tyrrell & Garth Investment Company, the successor in title of the W. C. Tyrrell Trust, which effort failed, and that no effort was made to agree with the other parties.

"Appellees properly concede that when attempt to agree upon value would be futile no attempt need be made. City of Dallas v. Crawford, Tex.Civ.App., 222 S.W. 305; Texas & N. O. Ry. Co. v. City of Beaumont, Tex.Civ.App., 285 S.W. 944 (application for writ of error refused); Clements v. Ft. Worth & D. S. P. Ry. Co., Tex.Civ.App., 7 S.W.2d 895; Lone Star Gas Co. v. Birdwell, Tex.Civ. App., 74 S.W.2d 294; 16 Tex.Jur., Sec. 118, pp. 732, 733; 20 C.J., Sec. 318, p. 896."

In Vol. 6, Nichols on Eminent Domain, Sec. 24–621(1), it is stated:

"The statutory requirement of an attempt to agree with the owner does not, it has been held, confine the negotiations to the owner of the fee. *However, an inability to agree with the fee owner will ordinarily excuse the necessity for negotiations with a cotenant* (Public Service Co. [of Northern Illinois] v. Recktenwald [290 Ill. 314], 125 N.E. 271 [8 A.L.R. 466]), a contract vendee (South Park Comrs. v. Livingston [344 Ill. 368], 176 N.E. 546), the holder of a vendor's lien (Delfeld v. Tulsa [191 Okl. 541], 131 P.2d 754 [143 A.L.R. 1032]), a mortgagee (Coles v. Midland Tel. & Tel. Co. [67 N.J.Law 490], 51 A. 448), *a tenant* (Lowe v. Indiana Hydroelec-

tric Power Co. [197 Ind. 430], 151 N.E. 220), *a lessee* (In re Rochester [H. & L.] R. Co. [110 N.Y. 119], 17 N.E. 678), or the holder of a dower interest (Lowe v. Indiana Hydroelectric Power Co. [197 Ind. 430], 151 N.E. 220)." (Emphasis added.)

Under the record in this case negotiations on the part of the condemning authorities to settle with the appellants Aronoffs (the fee owners of the property) were fruitless and futile from the beginning, with the appellants Aronoffs contesting from the beginning the power and authority of the condemning authorities to condemn the subject property. It is also clear from the record that negotiations to settle with the two lessee appellants would not have avoided the present litigation by reason of the fact that the appellants Aronoffs, the dominant landowners, had already declined to accept the bona fide offer of settlement made to them by the Turnpike Authority, which offer was confirmed and ratified by the City of Dallas, and the requisite full title to the condemned property could not have been conveyed to condemnors without the joinder of the appellants Aronoffs.

Appellants Aronoffs' points 7 to 11, incl., appellant Federal Sign Company's points 2 to 21, incl., and appellant Davis-McPhail Electric Company's points 3 to 5 incl., are respectfully overruled.

We also hold that under this record the trial court did not err in permitting appellees' attorneys to make the objections they made to the jury argument of appellants Aronoffs' attorney, and that no reversible error is shown by appellants Aronoffs' points 12 to 14, incl., and said points are respectfully overruled.

Appellant Davis-McPhail contends that the verdict of the jury insofar as it awarded nothing to Davis-McPhail constituted a taking of its property without compensation being made in violation of Art. 1, Sec. 17, of the Texas Constitution, Vernon's Ann.St. However, Davis-McPhail presents no points that the verdict of

the jury which awarded nothing to Davis-McPhail was not supported by sufficient evidence or that such verdict was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

The property involved in this condemnation proceeding was owned, subject to the leasehold estates of Federal Sign Company and Davis-McPhail Electric Company, by the appellants Nathan and Rochelle Aronoff.

All of the property which was under lease to Davis-McPhail was included within the area condemned by appellees. Under its lease contract, Davis-McPhail was obligated to pay a monthly rental of $110 and the term of the lease was to have continued until February 28, 1959. The lease contract between Davis-McPhail and the landowners Aronoffs apparently anticipated the condemnation of the property covered by the lease. Paragraph 13 thereof provides:

"Lessee agrees that lessor shall not be responsible for any damages to lessee because of any alterations, or seizures, by any governmental agency or agencies."

The valuation witnesses called by the appellees, City of Dallas and Texas Turnpike Authority, testified that the reasonable rental value for the property covered by the Davis-McPhail lease did not exceed the contract rental of $110 per month; and, therefore, that the cash market value of the leasehold estate was $0. No evidence to the contrary was elicited from any of the witnesses who testified at the trial below, except one of the appraisal witnesses called by the Aronoffs who ventured the rough guess that the reasonable rental for the property probably exceeded the contract rental. The jury, in its deliberations, apparently gave greater weight and credence to the opinions of the appraisal witnesses called by the appellees; for the jury determined that the reasonable cash market value of the leasehold estate of Davis-McPhail was $0.

Appellant Davis-McPhail failed to produce testimony sufficient to satisfy the jury that its leasehold estate had any value. We hold that this Court under the record in this case is not authorized to disturb the jury's finding to the effect that the Davis-McPhail leasehold estate had no value. Since the evidence was sufficient to support the jury's finding to the effect that the Davis-McPhail leasehold had no value, we are of the opinion that under this record there was no showing made that the leasehold estate of Davis-McPhail Electric Company was taken without adequate compensation being made in violation of Art. 1, Sec. 17, Constitution of Texas. Especially is this true because the jury determined upon ample evidence that the value of the entire property condemned amounted to $26,389.00, which substantial amount of money was paid for the taking of the entire property condemned. The fact that the jury determined as a matter of fact that the leasehold estate of Davis-McPhail was valueless is of no concern to the appellees. The appellant Davis-McPhail had the burden of proving that its leasehold estate had a value and it failed to put on sufficient competent evidence to satisfy the jury in this respect. The effect of the verdict of the jury to the effect that the Davis-McPhail leasehold interest had no value was not to decrease the extent of the condemnors' liability in this case; rather, it had the effect of increasing the apportionment to the two other interested parties, the landowners Aronoffs and the other lessee, Federal Sign Company. We overrule appellant Davis-McPhail's first and second points. In this connection see the following authorities: Frankfurt v. Texas Turnpike Authority, Tex.Civ.App., 311 S.W.2d 261; State v. Parkey, Tex.Civ.App., 295 S.W.2d 457, wr. ref., n. r. e.; State v. Ferris, 227 La. 13, 78 So.2d 493; 4 Nichols on Eminent Domain, Sec. 12.42(3); New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J.Super. 309, 123 A.2d 25.

In Frankfurt v. Texas Turnpike Authority, supra [311 S.W.2d 265], it was stated:

"The rule seems to be well settled in Texas that the payment of rentals is a factor which must be considered in arriving at the fair market value of a lease. See Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, wr. ref., n. r. e.; Nichols on Eminent Domain, Sec. 12.42(3); State v. Parkey, supra. Business judgment and self-interest would dictate that a voluntary buyer be concerned with the seller's obligation to pay rentals together with all the other terms and conditions of a lease contract."

In State v. Ferris, 227 La. 13, 78 So.2d 493, 497, it was stated:

"If the right of lessee is worth no more than he has agreed to pay in futuro for it, the expropriator of that right would pay him nothing * * *. But if the right of lease will bring a greater sum than it is to cost the lessee, the latter is entitled to be paid the amount of such excess. * * *"

See also Nichols on Eminent Domain. Vol. 2, Sec. 5.23(1) pp. 38, 39; Vol. 4, Sec. 12.42(1) p. 163, Sec. 12.42(2) pp. 172, 173, and Sec. 12.42(3) pp. 175–177, wherein the above principle is recognized and discussed. There it is stated that the lessor and lessee are entitled to share in the expropriation award according to their respective interests and that the matter of the apportionment is of no concern to the condemnor, being a problem in which only claimants are involved.

We also hold that the trial court did not commit reversible error under this record in excluding the testimony of James T. Davis concerning the value of the leasehold estate of Davis-McPhail Electric Company and concerning the value of permanent improvements placed into the leasehold estate by Davis-McPhail. We think the trial court correctly concluded that ap-

pellant Davis did not properly qualify himself to express an opinion upon the value of the leasehold estate in question. We also think the value of the permanent improvements placed on the leasehold estate by Davis-McPhail Electric Company was not a proper item of evidence to be received in the case. See Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, wr. ref., n. r. e., and authorities cited therein. Furthermore, these points do not show reversible error for there were no bills of exception made showing what Mr. Davis' testimony on these matters would have been had he been allowed to testify on these matters. See Tex.Jur., Appeal and Error, Sec. 421; Rules 372 and 373, T.R.C.P.; Bradford v. Magnolia Pipe Line Co., Tex. Civ.App., 262 S.W.2d 242, and authorities therein cited.

Each and all of appellants' points are respectfully overruled and the judgment of the trial court is accordingly affirmed.