CV3-640.rebota 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00640-CV







The State of Texas, Appellant



v.



Rebota, Inc.; Provident National Assurance Company; 


and IBRC, Ltd., Appellees (1)






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 91-005-C277, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







PER CURIAM


 The State of Texas appeals the valuation given the whole property in this
condemnation case. By three points of error, it challenges the exclusion of its value evidence and
the direction of the verdict favoring the appellees. We will affirm the judgment of the trial court.



BACKGROUND


 The State wanted to acquire 0.478 acre (20,804 square feet) of a 2.238-acre (97,487
sq. ft.) tract of land adjacent to Research Boulevard in Williamson County to expand and improve
United States Highway 183. On the tract were three buildings, one of which had been a
McDonald's restaurant before the condemnation was announced. Rebota, Inc. had a ground lease
with McDonald's Corporation for approximately 42,000 square feet of the tract. McDonald's in
turn leased the land and improvements to Haljohn, Inc., a local McDonald's franchisee. Before
the date of the condemnation, McDonald's terminated both the lease and sublease, the franchisee
vacated, and the distinctive McDonald's architecture was removed. McDonald's and Haljohn
thereafter opened a McDonald's restaurant nearby on 183. By the time of trial, Rebota owned
all of the interests in the property.

 At trial, parties introduced differing estimates of the property's value before
condemnation; the value of the remainder after condemnation was undisputed as $426,305. 
Rebota's expert, David Bolton, valued the property on the income approach at $2,022,000. This
included his valuation of the McDonald's portion at $1,435,000 and the rest of the property at
$587,000. He set the market value of the McDonald's property at $37.50 per square foot, higher
than the market value without the lease, but lower than the lease rate of around $43 per square
foot. The State's expert, Paul Hornsby, valued the property by the cost approach at $1,220,661
and the market data approach at $906,246. Hornsby estimated the rental value of the McDonald's
portion at $25 per square foot.

 The dispute in this case centered on the inclusion or exclusion of Hornsby's
valuations. The court initially denied both parties' motions in limine to exclude testimony of the
other's experts. When Hornsby began testifying, Rebota objected, contending that Hornsby's
testimony was not based on the proper measure of damages because he did not include the value
of the McDonald's lease and sublease; Hornsby said he did not use the lease value in his
computations because he considered it too far above the fair market value. The court initially
overruled the objection. 

 The court later sustained Rebota's renewed objection and excluded Hornsby's
testimony. The court determined that Hornsby's decision to ignore the contract value of the lease
was based on a conclusion that the lease's excess value stemmed from the impermissible, for
condemnation valuation purposes, inclusion of non-rent factors (i.e., the excess value was an
alternate method of collecting sales revenue). The court concluded that the State would not be
able to produce admissible evidence to support its improper inflation theory. The court found that
this inability to justify the discrepancy rendered Hornsby's testimony, based on the lower market
rate, irrelevant and inadmissible.

 The parties then made a bill of exception of what Hornsby's testimony would have
been. The State adduced his calculations without the lease value; Rebota got his estimate that the
lease added more than $600,000 of value to the property. Both parties rested. The court then
granted a directed verdict for Rebota based on the only value testimony in evidence, that provided
by Rebota's expert.



DISCUSSION


 The State asserts by its points of error that the court erred first by not admitting
Hornsby's testimony on the fair market value of the whole property by the income approach, then
by striking his previously admitted testimony on that value by the cost and market data
approaches, and finally by granting a directed verdict for Rebota on the grounds that Bolton's
testimony was the only admissible evidence of that value.

 We assess the first two points of error on the abuse of discretion and harmless error
standards. Excluding evidence is within the discretion of the trial court. Tracy's v. Annie's Attic,
Inc., 840 S.W.2d 527, 531 (Tex. App.--Tyler 1992, writ denied). An abuse of discretion occurs
whenever a trial court acts unreasonably, arbitrarily, or without reference to guiding rules and
principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986). To reverse for improper exclusion, we must find that the trial court's error probably
caused rendition of an improper judgment. Tex. R. App. P. 81(b)(1); Gee v. Liberty Mut. Fire
Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).

 The trial court excluded Hornsby's testimony as irrelevant. To be relevant,
evidence must tend "to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the evidence." Tex. R. Civ.
Evid. 401. The court must have concluded that Hornsby's evidence of the value of the property
excluding the lease value had no bearing on the determination of the value of the property
including the lease value.

 The value of the property is the price that the property would bring if offered for
sale by one who desired to sell but was under no obligation to sell, and was bought by one who
desired to buy but was under no necessity to buy. State v. Windham, 837 S.W.2d 73, 77 (Tex.
1992); Carpenter, 89 S.W.2d 194, 202 (Tex. 1936). If the condemned land is encumbered with
a lease, the condemnor is liable for the reasonable market value of the land plus the reasonable
market value of the lease; the land and lease must be included in the determination by the
factfinder under the undivided fee rule. Reeves v. City of Dallas, 195 S.W.2d 575, 581-82 (Tex.
Civ. App.--Dallas 1946, writ ref'd n.r.e.). The undivided fee rule requires a factfinder, while
assessing the value of a condemned tract which has multiple interests or owners, to value the tract
as if it had one owner and then apportion the award among the owners according to their
respective interests. Urban Renewal Agency v. Trammel, 407 S.W.2d 773, 777 (Tex. 1966);
Aronoff v. City of Dallas, 316 S.W.2d 302, 307 (Tex. Civ. App.--Texarkana 1958, writ ref'd
n.r.e.).

 The State insists that the trial court's ruling violated the undivided fee rule. The
State particularly emphasizes that the value the condemnor must pay "cannot be increased by any
contracts or distribution among the different persons owning interests in it; and that the sum of
all the parts can not exceed the whole." Aronoff, 316 S.W.2d at 308 (citation omitted) (emphasis
added). 

 The State's insistence that Aronoff requires the factfinder to ignore the lease value
misinterprets Aronoff and ignores Reeves. The Aronoff exclusion from the total valuation of
contracts among interest-holders does not require blanket exclusion of the value of leaseholds. 
The Aronoff court held that the condemnor was not required to negotiate with small interest-holders after large interest-holders had refused settlement; this holding enabled condemnors to
avoid the risk of having the total compensation paid to owners exceed the value of the property
as assessed by the jury should the negotiated settlements to the claimholders exceed their
proportionate share of the jury's valuation. Aronoff, 316 S.W.2d at 305-08. That risk is not
present here because there is no showing of conflicting negotiations and because Rebota
consolidated all of the property interests in itself. The lease increased the overall value of the
property; including the lease value did not cause the sum of the parts to exceed the whole.

 Consideration of the above-market lease rate does not impinge upon the undivided
fee rule. The experts agreed that the McDonald's lease was above the market rental rate. The
experts agreed that the long-term, guaranteed above-market lease rate from a solvent lessee added
value to the property because it ensured an income stream greater than the market would
otherwise have provided. The enhanced income stream added value to the pre-condemnation
value of the property as a unit.

 The State also contends that the court should have rejected consideration of the
above-market lease because the lease was terminated before the date of the taking. The effects
of the condemnation must be ignored, however. City of Fort Worth v. Corbin, 504 S.W.2d 828,
830-31 (Tex. 1974). The court was well within its discretion to determine that the evidence
showed that the lease termination was due exclusively to the condemnation. By considering the
above-market rate, the court properly ignored the effect of the termination.

 The court was within its discretion to exclude Hornsby's testimony as irrelevant. 
The court could have found that Hornsby's testimony, which ignored the enhancement of the
above-market lease rate, was unhelpful in determining the value of the property including that
favorable lease. (2) Our conclusion affects both points of error because Hornsby testified that he
excluded the actual lease rate from his computations under each method, causing his valuations
to be much lower than they would have been had he included the actual lease rate. We overrule
points one and two.

 This conclusion also resolves the remaining point of error. When reviewing the
grant of a directed verdict, we consider all the evidence and inferences in a light most favorable
to the losing party. White v. Southwestern Bell Tel. Co., 651 S.W.2d 260, 262 (Tex. 1983). If
any evidence of probative value conflicts with the verdict, the question is for the jury and the
directed verdict is improper. Id. After the court struck and excluded Hornsby's evidence, no
evidence contradicted Bolton's opinion of the value. The directed verdict was proper. We
overrule point three.



CONCLUSION


 We affirm the judgment of the trial court.


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: May 17, 1995

Do Not Publish

1.   McDonald's Corp. was also a party below; it assigned its interest to Rebota.
2.   Our holding here may be sharply limited by a peculiarity of this case. The State did
not present evidence regarding the inflation of the lease rate by forces other than the
rental market. The State hinted that the excess rent was a thinly disguised method of
sending profits to the McDonald's corporation, generated in a less-than-arm's-length deal. 
The State did not present this evidence, partly because the trial court barred presentation
of evidence not produced in discovery as part of the State's expert's opinion. The State
waived any error regarding this exclusion by not making a bill on this evidence and not
assigning it as error. In other cases, however, the State may be able to muster evidence
as to why the contract rental rate has no bearing on the market value of the property.