# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00447-CV

---

**In re State of Texas**

---

### ORIGINAL PROCEEDING FROM BASTROP COUNTY

---

## O P I N I O N

Relator, the State of Texas, filed a petition for writ of mandamus challenging the trial court's order sustaining real party in interest Bob Patterson's plea in abatement in the underlying eminent-domain proceeding. In that proceeding, the State petitioned for condemnation of certain "real property and interests or rights pertaining thereto," asserting that the condemnation is necessary for public use to make improvements to State Highway 71 in Bastrop County. Patterson holds an ingress-egress easement across the property at issue, which is owned in fee by Bobby R. Taylor and Betty Taylor. After the State filed its condemnation petition and the trial court appointed special commissioners to make an initial determination of the value of the property to be taken, but before the special commissioners' hearing, Patterson filed a plea in abatement based on the State's alleged failure to comply with the Texas Property Code's requirement that it make a bona fide offer to acquire the property from the property owner voluntarily. *See* Tex. Prop. Code § 21.0113. The trial court sustained the plea, abating the case until the State complies with Section 21.0113 by providing Patterson with a bona fide

offer and giving him fourteen days to respond to the offer. The trial court also postponed the special commissioners' hearing until the State complies with the order. The State asks this Court to direct the trial court to vacate the order sustaining the plea in abatement, so that the administrative phase of the condemnation proceeding may resume and the special commissioners' hearing may be held. We will conditionally grant mandamus relief for the reasons explained below.

## BACKGROUND

In its condemnation petition, the State named as defendants Bobby R. Taylor and Betty Taylor, who own in fee the property to be acquired, and Patterson, who holds an ingress-egress easement across the Taylors' property that provides his 19.843-acre property with access to State Highway 71.[1] The property that the State seeks to acquire is referred to as Parcel 38, and it is a 0.3365-acre portion of the Taylors' 7.96-acre property. Patterson asserts, and the State does not dispute, that the State's acquisition of Parcel 38 will render Patterson's property landlocked.

Before filing suit, the State, acting by and through the Texas Transportation Commission and the Texas Department of Transportation, contacted the Taylors on several occasions to discuss settlement offers for the acquisition of Parcel 38. The State also sent both initial and final offer letters to the Taylors and then filed the condemnation suit when it became apparent that the State and the Taylors could not reach agreement on a purchase price. *See id.*

---

[1] The State and Patterson both identify the Taylors as real parties in interest to this mandamus proceeding. The Taylors filed a response to the State's mandamus petition, asserting that they "are the only owners of the land" at issue in the suit, and stating that they are not opposed to this Court's grant or denial of mandamus relief because the relief sought in the petition does not relate to them.

(establishing requirements for bona fide offer, including initial offer made in writing to property owner, written appraisal obtained from certified appraiser before final offer, and final offer made in writing to property owner equal to or greater than appraisal amount); *see also id.* § 21.012 (establishing that entity with eminent-domain authority may begin condemnation proceeding by filing petition in proper court if entity "wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages").

Patterson filed a plea in abatement based on the State's alleged failure to comply with the Texas Property Code's requirement that it make a bona fide offer to acquire the property from the property owner voluntarily. *See id.* § 21.0113. The State filed a response, asserting that Texas law is clear that the trial court has no jurisdiction during this stage of the proceedings to consider Patterson's complaint about its purported failure to make a bona fide offer because Section 21.0113's bona fide offer requirement is not jurisdictional, and thus, Patterson cannot avail himself of Section 21.047(d)'s abatement remedy at this stage of the proceedings. Moreover, the State argued, even assuming the trial court had jurisdiction, Patterson's claims are without merit because the State made a bona fide offer that comported with Section 21.0113's requirements to the Taylors, who are the "property owners" contemplated by the Property Code, and the State was not required to make a bona fide offer to Patterson because Texas law does not require a condemning entity to negotiate with all of the interest-holders to a property. After a hearing, the trial court signed the order sustaining Patterson's plea. This mandamus proceeding followed.

## STATUTORY FRAMEWORK

Before turning to the issues raised by the State in its mandamus petition, we will provide some relevant background information about eminent-domain proceedings and the availability of mandamus relief in these proceedings. "The eminent domain statute is designed to provide a speedy and fair assessment of damages." *Gulf Energy Pipeline Co. v. Garcia,* 884 S.W.2d 821, 823 (Tex. App.—San Antonio 1994, orig. proceeding); *see also In re State*, 85 S.W.3d 871, 876 (Tex. App.—Tyler 2002, orig. proceeding) (op. on reh'g). To achieve that goal, the Texas Legislature has established a two-part procedure for condemnation proceedings.

Under the Property Code, the first phase of a condemnation proceeding is an administrative proceeding; then, if necessary, a judicial proceeding follows. *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex. 1984). When a party with eminent-domain authority desires to condemn land for public use but cannot agree on settlement terms with the property owner, the condemning party must file a petition in a proper court in the county in which the land is located. *Id.* (citing Tex. Prop. Code §§ 21.001, .003, .013); *see also* Tex. Prop. Code § 21.012 (establishing requirements for condemnation petition). After a petition is filed, the trial court appoints three special commissioners who "assess the damages of the owner of the property being condemned" after a properly noticed evidentiary hearing. Tex. Prop. Code §§ 21.014-.016, .042. The special commissioners "then file an award which, in their opinion, reflects the value of the sought-after land." *Amason*, 682 S.W.2d at 242. The special commissioners' power is limited to filing in the proper court an award of fair compensation for the condemnation—they have no power to determine any other issues, including whether the condemning party has the right to condemn the property. *Id.*

4

The administrative phase is designed to provide "a means to quickly award damages . . . without the delays that occur in court proceedings." *In re State*, 85 S.W.3d at 876; *see also PR Invs. v. State*, 251 S.W.3d 472, 478 (Tex. 2008) (explaining that administrative phase provides parties with opportunity to present their case in "a relatively streamlined fashion and to resolve their differences" without "the burdens of a trial"). The Texas Supreme Court has observed that "the parties often accept the commissioners' decision or settle their differences shortly after the award is made," bringing the eminent-domain proceedings "to a prompt and reasonably satisfactory conclusion with a minimum of expense and inconvenience to the parties." *State v. Nelson*, 334 S.W.2d 788, 791 (Tex. 1960). During this phase, the trial court only has "jurisdiction to appoint the commissioners, receive their opinion as to value, and render judgment based upon the commissioners' award," *Gulf Energy Pipeline Co.*, 884 S.W.2d at 822, and to consider its own jurisdiction to appoint special commissioners, *In re Lazy W District No. 1*, 493 S.W.3d 538, 543-44 (Tex. 2016) (orig. proceeding).

After the special commissioners file their award, if any party is dissatisfied with the commissioners' award, it may file objections to the commissioners' findings in the trial court, thus invoking the trial court's jurisdiction and initiating the judicial phase, which is the second phase of the condemnation proceeding. Tex. Prop. Code § 21.018; *see also Gulf Energy Pipeline Co.*, 884 S.W.2d at 823. Once timely objections have been filed and citation is served, the commissioners' award is vacated and may not be reinstated. *Amason*, 682 S.W.2d at 242; *In re State*, 85 S.W.3d at 877. The proceeding becomes a civil case, and the trial court has jurisdiction to determine all issues in the suit in a trial de novo. *Gulf Energy Pipeline Co.*, 884 S.W.2d at 823; *see also* Tex. Prop. Code § 21.018(b) (establishing that after objection, trial court shall cite adverse party and "try the case in the same manner as other civil causes"). Without a timely

5

filed objection, an eminent-domain proceeding never becomes a civil case. *Gulf Energy Pipeline Co.*, 884 S.W.2d at 823; *see In re Lazy W Dist. No. 1*, 493 S.W.3d at 542 ("If no party timely files an objection to the award, the trial court adopts the commissioners' findings as the judgment of the court.").

When a trial court abuses its discretion by acting outside its jurisdiction, mandamus relief is proper. *In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 522 (Tex. 2010) (orig. proceeding). Moreover, because "[t]he Property Code implements a legislative policy designed to avoid the delays that occur in court proceedings" and "provides condemnors a substantial right to an expedited hearing and possession of the easement immediately after the commissioners file their findings," mandamus relief is appropriate if the trial court has issued void orders that delay "wrongfully halted proceedings over which another body has jurisdiction." *Gulf Energy Pipeline Co.*, 884 S.W.2d at 824. Thus, if the State's assertions are correct and the trial court has abused its discretion, the State has no adequate remedy by appeal and mandamus relief is appropriate. *In re State*, 325 S.W.3d 848, 854 (Tex. App.—Austin 2010, orig. proceeding) (concluding that condemnor had no adequate remedy by appeal and that "the failure to employ mandamus when this type of substantial right is placed in jeopardy 'would vitiate and render illusory the right to a rapid, inexpensive alternative to traditional litigation'" (quoting *Gulf Energy Pipeline Co.*, 884 S.W.2d at 824)).

**ANALYSIS**

The State asserts that the trial court abused its discretion in sustaining Patterson's plea in abatement. First, the State contends that at this initial administrative phase of the condemnation proceedings, the trial court lacked jurisdiction to consider Patterson's plea in

6

abatement and improperly applied the remedy of abatement provided for in Property Code Section 21.047(d). Second, the State argues that even if the trial court had jurisdiction, and even if the remedy of abatement were available, the facts do not support the trial court's finding that the State violated Section 21.0113 by failing to make a bona fide offer to Patterson.

Assuming without deciding that the trial court had jurisdiction to consider Patterson's plea in abatement, we turn to the State's argument that the facts do not support the trial court's finding that the State violated Section 21.0113. The State contends that it was not required to make an offer to Patterson because he is not the property owner as contemplated by the statute; instead, he is merely an easement holder. The State argues that when the portions of the Property Code detailing the required procedure for making a bona fide offer are read together and in context, the statute provides that the duty of a bona fide offer is owed to "the person in whose name the property is listed on the most recent tax roll of any appropriate taxing unit authorized by law to levy property taxes against the property." Tex. Prop. Code § 21.0112(a) (requiring landowner's bill of rights statement to be provided "to a landowner before or at the same time as the entity [with eminent-domain authority] first represents in any manner to the landowner that the entity possesses eminent-domain authority" and also to be sent to person listed on tax roll not later than the seventh day before the date that entity "makes a final offer to a property owner to acquire real property"); *see also id.* § 21.0113. In response, Patterson asserts that the State should be required to make him a bona fide offer because the State's taking of Parcel 38 also affects his 19.843-acre property by taking that property's only access to a public road. He argues that the portion of the Taylors' property being taken by the condemnation proceeding is subservient to and encumbered substantially by the dominant easement in favor of Patterson. He further asserts that the proposed taking makes both his tract and the Taylors' tract

7

landlocked, but that he is "clearly the most adversely affected party" and is therefore entitled to the bona fide offer. We must construe the meaning of "property owner" as used in the eminent-domain statute to determine whether the State was required to make Patterson a bona fide offer.

We review issues of statutory interpretation de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). When we construe a statute, our goal is "to determine and give effect to the Legislature's intent." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *see also* Tex. Gov't Code § 312.005. "[W]e look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017); *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning.").

Chapter 21 of the Property Code (the eminent-domain chapter) does not define the term "property owner"; thus, we begin with its plain and common meaning. *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 531 (Tex. 2020). Words and phrases "shall be read in context and construed according to the rules of grammar and common usage." *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) (quoting Tex. Gov't Code § 311.011). "We determine legislative intent from the entire act and not just its isolated portions." *City of San Antonio*, 111 S.W.3d at 25. We presume the Legislature "chooses a statute's language with care, including each word chosen for a purpose," and that it purposefully omits words that it chooses not to use. *TGS–NOPEC*, 340 S.W.3d at 439. "We

must not interpret the statute 'in a manner that renders any part of the statute meaningless or superfluous.'" *Crosstex Energy*, 430 S.W.3d at 390 (quoting *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex. 2008)).

Here, the term "property owner" is used throughout the eminent-domain statute, as well as the terms "the owner of the property" and "landowner." When the provisions that govern the procedure for initiation of condemnation proceedings are read together and in context, it is clear that the statute contemplates that the "property owner" is the fee owner of the real property that the condemnor seeks to acquire. For example, Section 21.011 requires that:

> An entity with eminent domain authority that wants to acquire *real property* for a public use shall, by certified mail, return receipt requested, *disclose to the property owner* at the time *an offer to purchase or lease the property* is made any and all appraisal reports produced or acquired by the entity relating specifically to the owner's property and prepared in the 10 years preceding the date of the offer.

Tex. Prop. Code § 21.0111(a) (emphases added); *see also Real Property*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "real property" as "land and anything growing on, attached to, or erected on it"). In addition, to begin a condemnation proceeding, the statute prescribes that when the "entity with eminent domain authority wants to acquire *real property* for public use but is unable to agree with the *owner of the property* on the amount of damages," the entity files a petition in the proper court that must contain certain information, including: "the name of the *owner of the property* if the owner is known," a statement "that the entity provided the *property owner* with the *landowner's* bill of rights statement in accordance with Section 21.0112," and a statement "that the entity made a bona fide offer to acquire *the property* from the *property owner* voluntarily as provided by Section 21.0113." Tex. Prop. Code § 21.012(a)-(b)(3), (5), (6) (emphases added). The provision requiring a bona fide offer uses the same

language: "An entity with eminent domain authority that wants to acquire *real property* for a public use must make a bona fide offer to acquire the property from the *property owner* voluntarily." *Id.* § 21.0113(a) (emphases added).

In all these instances, the term "property owner" is circumscribed by the use of the words "real property" in close proximity. Most importantly, Section 21.0112 requires that before the entity with eminent-domain authority "makes a final offer to a *property owner* to acquire *real property*," it must provide the landowner's bill of rights statement "to the last known address of *the person in whose name the property is listed on the most recent tax roll* of any appropriate taxing unit authorized by law to levy property taxes against the property" and to "provide a copy of the landowner's bill of rights statement to *a landowner* before or at the same time as the entity first represents in any manner to the landowner that the entity possesses eminent domain authority." *Id.* § 21.0112(a) (emphases added). From a policy perspective, it makes sense that regardless of whether the condemnor seeks to acquire the real property itself or merely a real-property interest, such as a lease or an easement, the condemnor must be required, at a minimum, to notify and negotiate with the fee owner of the real property that the condemnor seeks to take or to take an interest in. On the other hand, a given tract of real property may have numerous interest holders associated with it, including leaseholders, surface-interest owners, mineral-interest owners, and easement holders. While these interest holders are potentially entitled to participate in the proceedings to seek compensation if their interests are affected, requiring the condemnor to make a bona fide offer to each of them would not comport with the statute's purpose, which is "to provide a speedy and fair assessment of damages." *See Gulf Energy*, 884 S.W.2d at 823.

In contrast, in a later subchapter, the statute authorizes a right of repurchase for "[a] person from whom a *real property interest* is acquired by an entity through eminent domain for a public use, or that person's heirs, successors, or assigns, is entitled to repurchase the property as provided by this subchapter . . . ." Tex. Prop. Code § 21.101(a) (emphasis added). Section 21.101 further provides that "[a] district court may determine all issues in any suit regarding the repurchase of a *real property interest* acquired through eminent domain by the *former property owner* or the owner's heirs, successors, or assigns." *Id.* § 21.101(c) (emphases added). Because the condemnor sometimes only acquires a real-property interest such as a lease or an easement through condemnation proceedings, the statute logically refers to the broader category of real-property interests, as opposed to only "real property." Because we presume that the Legislature chooses each word of a statute for a purpose and that it purposefully omits words that it chooses not to use, *TGS–NOPEC*, 340 S.W.3d at 439, we conclude that the Legislature intended to distinguish between the "property owner" of "real property" referred to in the earlier part of the statute and the "former property owner" of a "real property interest" in the later part of the statute.

Here, the State contends that it complied with the statutory requirements because it made a bona fide offer to Bobby R. Taylor, who is listed on the county tax rolls as the owner of the property of which Parcel 38 is a part. Patterson does not contend that he is "*the person in whose name the property is listed on the most recent tax roll* of any appropriate taxing unit authorized by law to levy property taxes against the property" or the "property owner" or "landowner" of the real property the State seeks to acquire. Tex. Prop. Code § 21.0112(a) (emphasis added). Instead, he argues that he is "clearly the most adversely affected party" and thus entitled to the bona fide offer because the Taylors' property is encumbered by his easement.

11

However, "[u]nlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (citing RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2 cmt. d); *see Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) ("An easement does not divest a property owner of title, but allows another to use the property for [a specific] purpose."). Even if the State sought to acquire only Patterson's easement, the Taylors would still be entitled to notification and a bona fide offer because "[w]hile the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder." *Id.* In this case, the State seeks to acquire more than Patterson's easement; it seeks to acquire a portion of the real property owned in fee by the Taylors, too. On these facts, we conclude that the State was required to make a bona fide offer only to the Taylors.

In addition, the law is well settled that the condemnor is not required to negotiate with every interest holder. *See Aronoff v. City of Dallas*, 316 S.W.2d 302, 307 (Tex. App.—Texarkana 1958, writ ref'd n.r.e.). "The undivided-fee rule states that when real property has been carved into different interests, the property is valued for condemnation purposes as if it were owned by a single party." *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 873 (Tex. 2009). The rule's purpose is to award full compensation for the land itself, not for the sum of the different parts. *Id.* Although the interest holders are each entitled to a share of the condemnation award, "the award should be paid for the property itself, then apportioned between them." *Id.*

Moreover, if the condemnor is unable to agree with one condemnee after a good-faith effort to do so, then it is not required to enter into negotiations with other condemnees

because such negotiations will not avoid the need for condemnation litigation. *Aronoff*, 316 S.W.2d at 308. Although Patterson asserts that he is "the most adversely affected party to the 'taking'" and thus entitled to the bona fide offer, the only real property that the State seeks to acquire belongs to the Taylors. As an interest holder and a party to the condemnation petition, Patterson may participate in the special commissioners' hearing and advocate his position regarding the amount of compensation owed for the easement so that it is incorporated into the total compensation paid for the property. *See* Tex. Prop. Code § 21.015; *Aronoff*, 316 S.W.2d at 307 ("[T]he ultimate question, in so far as the [State] is concerned, is the total compensation required to be paid for the property itself."). Then if he is dissatisfied with the amount awarded, he may object to the special commissioners' findings and seek a trial de novo pursuant to Section 21.018. If necessary, he may be able to file an inverse-condemnation claim or any other civil claim that he considers appropriate. *See AVM-HOU, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574, 578-79 (Tex. App.—Austin 2008, no pet.) (explaining that inverse-condemnation claim is "initiated by a property owner to recover compensatory damages for injury done to his property by the act of an entity having, but not then exercising, the power of eminent domain" (quoting *City of Austin v. Casiraghi,* 656 S.W.2d 576, 581 (Tex. App.—Austin 1983, no writ))). What he may not do is further delay the special commissioners' hearing in this condemnation proceeding.

## CONCLUSION

We hold that the trial court abused its discretion by granting Patterson's plea in abatement and ordering the State to make a bona fide offer to him before the special commissioners' hearing occurs. We conditionally grant the State's petition for writ of mandamus and direct the trial court to vacate its August 19, 2020 order, to deny Patterson's plea

13

in abatement, and to allow the administrative proceedings to resume. We are confident that the trial court will comply, and our writ will issue only if it does not.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Filed:   December 2, 2020