CITY OF McKINNEY,
Texas, Appellant,

v.

ELDORADO PARK, LTD., Appellee.

No. 11–05–00259–CV.

Court of Appeals of Texas,
Eastland.

Nov. 2, 2006.

---

188

Robert F. Brown, Alan D. Lathrom, Brown & Hofmeister, L.L.P., Richardson, for appellant.

Kenneth W. Sloan, Andrew H. Roberts, Sloan & Associates, P.C., Dallas, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J, and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

Appellant, the City of McKinney, Texas, sought to condemn property owned by appellee, Eldorado Park, Ltd., in connection with a roadway project. The trial court appointed three special commissioners to assess Eldorado Park's damages resulting from the condemnation. At the hearing before the special commissioners, both parties presented expert testimony from property value appraisers on the damages issues. The expert appraisers relied on a 1996 Federal Emergency Management Agency (FEMA) Letter of Map Revision to determine the portion of the subject property included in the floodplain. The special commissioners entered an award of damages to Eldorado Park.

The City appealed the special commissioners' award by filing objections with the trial court, and the trial court placed this cause on its docket. The City designated a new expert appraiser to testify on the damages issues at trial. The City's new expert relied on a document entitled Cottonwood Creek Master Drainage Study for the City of McKinney (2001 Master Drainage Study) to determine the portion of the subject property included in the floodplain. The 2001 Master Drainage Study doubled the amount of floodplain acreage in the subject property. Eldorado Park filed a plea to the jurisdiction arguing that the City's use of the 2001 Master Drainage Study materially changed the issues presented to the special commissioners and, therefore, deprived the trial court of subject-matter jurisdiction. The trial court granted Eldorado Park's plea and entered a judgment adopting the special commissioners' findings and award. The City appeals. Because the City's designation of a new expert witness and reliance on the 2001 Master Drainage Study did not deprive the trial court of subject-matter jurisdiction, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

*Factual and Procedural Background*

Eldorado Park owns a 17.419–acre tract of land located at the northeast corner of Lake Forest Drive and FM 720 in the City of McKinney. The City sought to acquire from Eldorado Park the following portions of the 17.419–acre tract in connection with the roadway project: (1) 1.0221 acres in fee simple for a road right-of-way; (2) .1216 acres for a slope easement; and (3) .2103 acres for a drainage easement. The City's efforts to purchase the property from Eldorado Park were unsuccessful; and the City, therefore, filed this condemnation action pursuant to Chapter 21 of the Texas Property Code. TEX. PROP.CODE ANN. §§ 21.001–.103 (Vernon 2000, 2004, & Supp.2006). The City's petition for condemnation complied with the pleading requirements set forth in Section 21.012 of the Property Code because the City's allegations (1) described the property to be condemned, (2) stated the purpose for which the City intended to use the property, (3) stated that Eldorado Park owned the property, and (4) stated that the City and Eldorado Park were unable to agree on Eldorado Park's damages. *See* Section 21.012(b)(1)-(4).

As required by Section 21.014 of the Property Code, the trial court appointed three special commissioners to assess Eldorado Park's damages resulting from the condemnation. *See* Section 21.014(a). The commissioners each signed an oath swearing to assess the damages fairly, impartially, and according to the law. *See* Section 21.014(b).

On November 20, 2003, the special commissioners held a hearing to assess Eldorado Park's damages. The City used Daniel Wright of Integra Realty Resources as its appraisal expert before the special commissioners. Wright relied on the 1996 FEMA Letter of Map Revision to determine that about 3.8009 acres of Eldorado Park's 17.419–acre tract were located in a flood hazard area. Wright determined that the total value of the 17.419 acres was $2,681,150 and that the value of the property to be condemned was $75,597. He also determined that there would be no damages to the remainder of the property—the part of Eldorado Park's property not being condemned—resulting from the condemnation. Thus, Wright concluded that the amount of damages due to Eldorado Park as a result of the condemnation was $75,597. Eldorado Park used Peter Malin of the Malin Group as its appraisal expert before the special commissioners. He also relied on the 1996 FEMA Letter of Map Revision in performing his appraisal. Malin determined that the value of the property to be condemned was $245,000 and that there would be no damages to the remainder of the property. Therefore, Malin concluded that the amount of damages due to Eldorado Park as a result of the condemnation was $245,000. The special commissioners assessed Eldorado Park's damages in the amount of $185,500.

The City filed objections to the special commissioners' award under Section 21.018(a) of the Property Code. Therefore, Section 21.018(b) of the Property Code required the trial court to cite Eldorado Park and "[to] try the case in the same manner as other civil causes." The City also deposited the amount awarded by the special commissioners into the registry of the court. *See* Section 21.021(a)(1). The trial court later ordered the clerk of the court to disburse the money deposited in the registry of the court to Eldorado Park. *See id.*

The record shows that the parties exchanged written discovery, but the record does not contain copies of the discovery requests or discovery responses. On November 11, 2004, the trial court entered an agreed discovery control plan and schedul-

ing order. The order required the City to file a designation of its testifying experts by November 18, 2004. The order set the cause for jury trial on February 28, 2005.

On November 18, 2004, the deadline set forth in the scheduling order, the City designated Stephen Fanning of Fanning & Associates as a testifying appraisal expert. The City produced Fanning's appraisal report to Eldorado Park on December 10, 2004. Fanning relied on the 2001 Master Drainage Study to determine that 3.8 acres of the 17.419 acres owned by Eldorado Park were located in a flood hazard area and that 3.7 acres of the 17.419 acres were located in a floodplain. Fanning determined that the total value of the 17.419 acres was $2,100,000 and that the value of the property to be condemned was $79,000. He also determined that there would be no damages to the remainder of the property. Therefore, Fanning concluded that the amount of damages due to Eldorado Park as a result of the condemnation was $79,000. The City produced a copy of the 2001 Master Drainage Study to Eldorado Park on January 19, 2005.

On February 11, 2005, Eldorado Park filed a plea to the jurisdiction and, in the alternative, motion to strike. Eldorado Park stated the following in its plea to the jurisdiction:

In this condemnation case, Eldorado Park files this Plea to the Jurisdiction in response to the City of McKinney, Texas' ("City") material change in the issues to be tried before this Court from the issues presented to the Special Commissioners. The City has indicated, by means of its expert's report produced on December 10, 2004, to present testimony and documentary evidence in the form of floodplain maps and a drainage study that materially vary from the expert opinions, floodplain maps and documentary evidence presented before the Special Commissioners.

This material change divests this Court of subject matter jurisdiction.

Eldorado Park asserted that the material change in the issues required the trial court to dismiss the City's objections to the special commissioners' award. In its motion to strike, Eldorado Park sought to prohibit the City from using the 2001 Master Drainage Study at trial "as a sanction for the City's egregious failure to produce, in a timely manner, [the study]." Eldorado Park submitted three affidavits and various documents in support of its plea to the jurisdiction and, in the alternative, motion to strike. The City filed a response to the plea and motion.

The trial court did not conduct an evidentiary hearing on Eldorado Park's plea to the jurisdiction and, in the alternative, motion to strike. The trial court determined that it did not have subject-matter jurisdiction over the cause. Therefore, the trial court entered a judgment granting Eldorado Park's plea to the jurisdiction, dismissing the cause with prejudice, dismissing the City's objections to the special commissioners' award, and adopting the special commissioners' findings and award of $185,500. The trial court issued findings of fact and conclusions of law in support of its judgment. In one of its conclusions of law, the trial court stated that "the City's deviation from the issues presented to the Special Commissioners create[d] the 'incurable jurisdictional defect' and remove[d] subject matter jurisdiction from this Court." Based on its ruling on the plea to the jurisdiction, the trial court did not rule on Eldorado Park's motion to strike.

### Issues on Appeal

The City presents four issues for review. In its first issue, the City argues that the

trial court erred in granting Eldorado Park's plea to the jurisdiction because the material change alleged by Eldorado Park—the variance between two floodplain studies—did not implicate the trial court's subject-matter jurisdiction. In its second issue, the City asserts that Eldorado Park waived its jurisdictional challenges by withdrawing the amount awarded by the special commissioners from the registry of the court. In its third issue, the City asserts that the trial court erred in concluding that the City's anticipated use of the 2001 Master Drainage Study at trial materially prejudiced Eldorado Park and injected a new subject matter into the cause. In its fourth issue, the City argues that, if the trial court lacked jurisdiction, the trial court erred in dismissing the City's objections to the special commissioners' award and in entering a judgment against the City based on the special commissioners' award.

### Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The plaintiff has the burden to allege facts affirmatively showing that the trial court has subject-matter jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In deciding a plea to the jurisdiction, a court considers the plaintiff's pleadings and the evidence offered by the parties relevant to the jurisdictional issue. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *Bland*, 34 S.W.3d at 554–55.

### The Trial Court's Jurisdiction

Proceedings to condemn land are special in character, and the party attempting to establish its right to condemn must show strict compliance with the law authorizing private property to be taken for public use. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 640 (Tex.2001). Currently, Chapter 21 of the Texas Property Code governs the procedures for condemnation proceedings. In condemnation proceedings, the property owner is given a single opportunity to recover damages for the taking of his property for public use. *Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 599 (Tex. 1979). Therefore, the protections of the statutory condemnation procedures must be liberally construed for the benefit of the landowner. *John v. State*, 826 S.W.2d 138, 140 (Tex.1992).

The Texas land condemnation scheme set forth in Chapter 21 is a two-part procedure involving first an administrative proceeding and then, if necessary, a judicial proceeding. *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 241 (Tex.1984). A condemnor initiates the administrative phase by filing a petition with the appropriate trial court. *See* Section 21.012(a). The petition must (1) describe the property to be condemned, (2) state the purpose for which the entity intends to use the property, (3) state the name of the owner of the property if the owner is known, and (4) state that the entity and the property owner are unable to agree on damages. *See* Section 21.012(b). After the condemnor files the petition, the trial court appoints three special commissioners

to assess the property owner's damages. *See* Section 21.014(a); *see also Bristol,* 65 S.W.3d at 640–41. The special commissioners conduct a hearing, enter findings, and determine damages due the property owner. *See* Sections 21.014, 21.018; *Metro. Transit Auth. v. Graham,* 105 S.W.3d 754, 757 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). From the time the condemnor files its petition up to the time of the special commissioners' award, the proceedings are administrative in nature. *Amason,* 682 S.W.2d at 242.

■■■■ The eminent domain jurisdiction of the trial court is appellate, as distinguished from original or concurrent. *State v. Nelson,* 160 Tex. 515, 334 S.W.2d 788, 791 (1960). Thus, the parties may not avoid an initial administrative hearing before the special commissioners even if they wish to do so. *Id.* Section 21.018(a) of the Property Code provides that the parties may challenge the special commissioners' findings by filing a written objection with the trial court. *See Bristol,* 65 S.W.3d at 641. The filing of an objection triggers the trial court's appellate jurisdiction; and, upon the filing of an objection, the cause becomes a judicial proceeding in the trial court. *Amason,* 682 S.W.2d at 241–42; *Graham,* 105 S.W.3d at 757.

■■■■ Section 21.018(b) of the Property Code provides that, if a party files an objection to the special commissioners' findings, the trial court "shall ... try the case in the same manner as other civil causes." Thus, when a party files an objection to the special commissioners' findings, the trial court conducts a trial de novo in the proceeding. *In re State,* 65 S.W.3d 383, 387 (Tex.App.-Tyler 2002, orig. proceeding); *Blasingame v. Krueger,* 800 S.W.2d 391, 394 (Tex.App.-Houston [14th Dist.] 1990, orig. proceeding). Although the trial court's jurisdiction is termed appellate jurisdiction, the trial de novo involves "trying the matter anew," just as if the special commissioners had not heard the matter before and had not rendered a decision. *Blasingame,* 800 S.W.2d at 394. The trial court is not confined to reviewing the special commissioners' findings to determine whether they adequately support the award. *Id.* Rather, the special commissioners' award is vacated and inadmissible in the trial de novo before the trial court. *Amason,* 682 S.W.2d at 242; *In re State,* 65 S.W.3d at 388; *Blasingame,* 800 S.W.2d at 394. In the trial de novo, the parties are not confined to using the evidence that they offered at the special commissioners' hearing. *Kennedy v. City of Dallas,* 201 S.W.2d 840, 841–42 (Tex.Civ.App.-Dallas 1947, writ ref'd n.r.e.).

■■■■ The courts have placed limits on the scope of the de novo proceeding. Courts have explained that the trial court's appellate jurisdiction is limited to the parties and issues involved in the administrative proceeding before the special commissioners. *See Brown v. State,* 984 S.W.2d 348, 350 (Tex.App.-Fort Worth 1999, pet. denied); *Patrick Media Group v. Dallas Area Rapid Transit,* 879 S.W.2d 375, 377 (Tex.App.-Eastland 1994, writ denied); *Bd. of Regents v. Puett,* 519 S.W.2d 667, 670 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.). In *Nelson,* the supreme court explained that trial courts do not have unlimited power to enlarge the subject matter of the proceeding. *Nelson,* 334 S.W.2d at 790. For example, the trial courts cannot acquire by amendment to the pleadings the power to condemn more land than that described in the petition for condemnation before the special commissioners. *Id.* The trial courts are also without jurisdiction over the claims of parties who were not parties to the proceedings before the special commissioners. *Patrick Media*

*Group,* 879 S.W.2d at 377; *Puett,* 519 S.W.2d at 671.

▬▬ In this cause, the trial court appointed special commissioners to assess Eldorado Park's damages resulting from the condemnation. The City triggered the trial court's appellate jurisdiction by filing objections to the special commissioners' award. When the City filed its objections to the award, this matter became a judicial proceeding in the trial court subject to a trial de novo. *Blasingame,* 800 S.W.2d at 394. The special commissioners considered and decided the damages issues. The same damages issues were before the trial court during the judicial proceeding. The City and Eldorado Park were not confined to using the evidence offered at the hearing before the special commissioners. *Kennedy,* 201 S.W.2d at 842. Section 21.018(a) of the Property Code provides for a trial de novo, not a substantial evidence review, in the trial court. *Blasingame,* 800 S.W.2d at 394. Nothing in Chapter 21 of the Property Code prohibits the parties from changing expert witnesses, identifying new expert witnesses, or using different documentary evidence after the hearing before the special commissioners. Thus, either party could have designated new witnesses or used different evidence on the damages issues in the trial court.

▬▬ The City designated a new expert witness, Fanning, on the damages issues. Fanning relied on the 2001 Master Drainage Study in arriving at his conclusions. The City did not seek to enlarge the subject matter of the proceeding, such as to condemn additional property or to expand the issues that were before the special commissioners. Fanning's proposed testimony on the value of the condemned property was relevant to the damages issues. Thus, the City's use of Fanning as an expert related to the very issues that the special commissioners previously decided. By designating Fanning, the City changed its evidentiary support relating to the damages issues, something that the City was allowed to do. *Kennedy,* 201 S.W.2d at 842. Fanning's testimony was an evidentiary matter, not a jurisdictional matter. The City's designation of Fanning as an expert witness and use of the different study did not materially change the issues presented to the special commissioners. Therefore, we hold that the City's use of Fanning and the different study for purposes of the trial de novo did not deprive the trial court of subject-matter jurisdiction in this cause.

▬▬ If evidentiary matters, such as the one involved in this cause, were considered jurisdictional and could deprive the trial courts of subject-matter jurisdiction, then judgments in condemnation proceedings would be subject to collateral attack. Lack of subject-matter jurisdiction renders a judgment void rather than merely voidable. *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990). Because a judgment rendered by a court without subject-matter jurisdiction is void, the judgment is subject to collateral attack. *Dolenz v. Vail,* 143 S.W.3d 515, 517 (Tex.App.-Dallas 2004, pet. denied). Subject-matter jurisdiction cannot be waived and may be raised for the first time on appeal. *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 358 (Tex.2004).

Thus, if the City's use of Fanning as an expert witness had deprived the trial court of subject-matter jurisdiction, Eldorado Park could have proceeded to trial without objecting to Fanning's testimony and raised the jurisdictional issue for the first time in a direct appeal or by way of a collateral attack. In every condemnation case, the property owner could collaterally attack the trial court's judgment on the jurisdictional ground that the evidence

presented to the trial court varied from the evidence presented to the special commissioners. Allowing collateral attacks based on mere evidentiary variances in condemnation proceedings would lead to great uncertainty and a lack of finality of judgments in condemnation proceedings. It would also contradict policy considerations favoring finality of judgments: "[T]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e, at 113 (1982)).

▄▄▄▄▄ Eldorado Park argues that the City's "egregious" conduct in this cause merited the trial court's granting of the plea to the jurisdiction. In support of its argument, Eldorado Park asserts that the City could have produced the 2001 Master Drainage Study much earlier but that, instead, the City intentionally withheld the study until about one month before trial. Eldorado Park also asserts that the City concealed the study. During the judicial proceeding phase of condemnation cases, the parties are free to conduct discovery under the Texas Rules of Civil Procedure. *See Blasingame*, 800 S.W.2d at 394. A delay in designating a witness or in producing a document might give rise to discovery sanctions in some cases. However, such a delay does not divest a trial court of jurisdiction. A trial court's subject-matter jurisdiction does not depend on the timing of a discovery response.

▄▄▄▄ In its motion to strike, Eldorado Park sought to prohibit the City from using the 2001 Master Drainage Study at trial "as a sanction for the City's egregious failure to produce, in a timely manner, [the study]." The trial court did not rule on Eldorado Park's motion to strike in light of its conclusion that it lacked subject-matter

jurisdiction. Therefore, Eldorado Park's motion to strike is not before this court. Additionally, the record does not support Eldorado Park's claim that the City engaged in discovery abuse. The record demonstrates that the parties exchanged written discovery. However, the record does not contain copies of the discovery requests or responses. Thus, there is no evidence in the record supporting Eldorado Park's contention that the City engaged in discovery abuse. The City designated Fanning in a timely manner under the trial court's agreed discovery control plan and scheduling order. The City produced the 2001 Master Drainage Study after designating Fanning as an expert witness. The record does not establish that the City violated any discovery rule in its production of the study. While discovery sanctions are appropriate in some cases, the record in this cause does not establish conduct on the part of the City that would warrant any discovery sanction.

In the trial court, Eldorado Park relied on *State v. PR Invs. and Specialty Retailers*, 132 S.W.3d 55 (Tex.App.-Houston [14th Dist.] 2004), in support of its plea to the jurisdiction. Following the original decision in *PR Investments*, the Houston Fourteenth court granted en banc review in the case. After the City filed its appeal in this cause, the Houston Fourteenth court withdrew the original opinion in *PR Investments* and issued an en banc decision in the case. *State v. PR Invs. and Specialty Retailers*, 180 S.W.3d 654 (Tex. App.-Houston [14th Dist.] 2005, pet. filed). Eldorado Park urges this court to adopt the reasoning of the dissent from the en banc court's opinion.

In *PR Investments*, the State of Texas sought to condemn .3407 acres of a 23-acre tract of land owned by PR Investments in connection with a highway construction plan. Specialty Retailers leased a portion

of the tract from PR Investments. The trial court appointed three special commissioners to determine the damages due to PR Investments and Specialty Retailers resulting from the condemnation. *PR Investments*, 180 S.W.3d at 657–58. At the hearing before the special commissioners, the parties apprised the special commissioners that construction for the project would be under a plan identified as the Sparks Plan. The Sparks Plan provided for a deceleration lane when entering and an acceleration lane when leaving the remainder of PR Investments's 23–acre tract. *Id.* at 659. At the conclusion of the hearing, the special commissioners assessed the damages jointly owed to PR Investments and Specialty Retailers. The State and PR Investments filed objections to the special commissioners' award, and the trial court scheduled the case for trial. *Id.*

Five days prior to the trial setting in the *PR Investments* case, the State changed construction plans for the project from the Sparks Plan to a plan identified as the Corder Plan. The Corder Plan did not contain the deceleration and acceleration lanes called for in the plan presented to the special commissioners. *Id.* at 659. PR Investments and Specialty Retailers asserted that the State's change to the Corder Plan deprived the trial court of jurisdiction for two reasons: (1) the change to the Corder Plan deprived them of greater rights and imposed greater burdens on the remainder property than did the Sparks Plan; and (2) the change to the Corder Plan changed the damages issues previously considered by the special commissioners. *Id.* at 660. The trial court granted the motions to dismiss based on these reasons. *Id.* at 664.[1]

In *PR Investments*, the court addressed the issue of whether the trial court lost jurisdiction in the trial de novo proceeding as a result of the State's switch in construction plans. After conducting a thorough analysis of the condemnation statute and relevant case law, the *PR Investments* court reached the following conclusions:

Nothing in the condemnation statute prohibits the condemnor from changing its specific plan for the property after the commissioners' hearing in a way that allegedly prejudices the landowners. Nor does any statutory provision require the damage issues in the trial de novo to be the same as those considered by the commissioners. Accordingly, the two legal bases upon which the trial court apparently concluded that it lacked jurisdiction to conduct a trial de novo regarding the Corder Plan have no basis in the condemnation statute and are erroneous statements of law.

*Id.* at 667 (citations omitted). Therefore, the court held that the State's change to the Corder Plan did not deprive the trial court of jurisdiction in the de novo proceeding. *Id.* at 669. The court reversed the trial court's dismissal and remanded the case for further proceedings. *Id.* at 676.

*PR Investments* stands for the proposition that a change in the damages issues after the special commissioners' award does not deprive the trial court of jurisdiction of the condemnation case. The State's change to the Corder Plan in *PR Investments* caused potentially greater damages to the remainder property. The Corder Plan did not contain deceleration and acceleration lanes. PR Investments argued that, because the Corder Plan

---

1. *PR Investments* also involved issues relating to the trial court's imposition of various sanctions against the State including the trial court's dismissal of the case for alleged discovery abuse. *PR Investments*, 180 S.W.3d at 669–76. This cause involves only the jurisdictional issue.

lacked deceleration and acceleration lanes, "the Corder Plan substantially restricted safe access to the property, thus decreasing the value of PR Investments's remaining property." *Id.* at 660. PR Investments claimed that less access to the property meant greater damages to the remainder property.

This cause does not involve damages to Eldorado Park's remainder property. All of the expert witnesses agreed that the condemnation would result in no damage to the remainder of the property. Nor does this cause involve a change in a condemnation plan after the special commissioners' hearing. The only damages issues in this cause relate to the value of the property the City seeks to condemn. The City's designation of Fanning and use of the 2001 Master Drainage Study did not change the damages issues. Rather, by designating Fanning and using the study, the City merely changed the evidence relating to the damages issues.

*PR Investments* involved changes in the condemnation plan and in the damages issues after the special commissioners' hearing. This cause does not involve any such changes. Thus, while the decision in *PR Investments* supports our decision in this cause, the facts in this cause are distinguishable from the facts in *PR Investments,* and our decision in this cause does not depend on the court's holding in *PR Investments.*

The dissenting opinion in *PR Investments* asserts that the majority opinion blurred the distinction between a trial court's subject-matter jurisdiction and a trial court's appellate jurisdiction, which the dissent also referred to as a trial court's "power to proceed" in eminent domain proceedings. The dissent stated that, by blurring the distinction, the majority permitted "the trial court to proceed to trial de novo despite a substantial and prejudicial departure from the damages issues presented to the special commissioners." *Id.* at 677. The dissent also asserted that, because the majority's holding allowed such a departure from the issues presented to the special commissioners, the majority's holding endorsed "trial by ambush" in eminent domain proceedings. *Id.* at 677, 681. As explained above, this cause does not present the issues that concerned the dissenting justices in *PR Investments* because this cause does not involve "a substantial and prejudicial departure from the damages issues presented to the special commissioners." Thus, whichever term is used—"subject-matter jurisdiction," "appellate jurisdiction," or "power to proceed"—the holding in this cause remains the same because the City did not change the damages issues presented to the special commissioners.

The majority's holding in *PR Investments* does not permit trial by ambush in eminent domain proceedings. During the trial de novo phase of eminent domain proceedings, the parties are free to conduct discovery under the Texas Rules of Civil Procedure. *See Blasingame,* 800 S.W.2d at 394. Discovery of a party's claims and issues before the trial de novo prevents trial by ambush.

Eldorado Park argues that permitting the City to use the 2001 Master Drainage Study at trial will effectively allow the City to subvert the administrative phase of the eminent domain proceeding in this cause. We disagree. First, as explained above, a change in the City's damages evidence at trial does not change the damages issues that the special commissioners decided. Second, the purpose of the administrative phase is to provide the parties an opportunity for a prompt resolution of the case with a minimum of expense. *See Nelson,* 334 S.W.2d at 791. Requiring the parties to expend the time

and money necessary to fully develop their claims and evidence before the special commissioners' hearing would defeat this purpose. The condemnation statute does not contain such a requirement.

The trial court erred in concluding that it lost subject-matter jurisdiction in this cause. Therefore, we sustain the City's first and third appellate issues. Because we have sustained these issues, we need not address the City's second and fourth issues. TEX.R.APP. P. 47.1.

*This Court's Ruling*

We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.