# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00260-CV

### In re State of Texas

### ORIGINAL PROCEEDING FROM BELL COUNTY

### O P I N I O N

In November 2009, the State, "acting by and through" the Texas Transportation Commission (the "Commission") and the Texas Department of Transportation (the "Department") (cumulatively the "State"), initiated an eminent domain proceeding in order to acquire property from James and Rosemary LeGuin ("the LeGuins"). After the State initiated the proceeding, the LeGuins asked the State to disclose various documents related to the value of the property to be condemned and to construction plans for the property. The State objected to the request, but the trial court ordered the State to produce the requested documents. In response to the trial court's order, the State filed a petition for writ of mandamus asking this Court to vacate the trial court's order. We will conditionally grant the writ.

### STATUTORY FRAMEWORK

Before addressing the issues presented in this mandamus, some preliminary background regarding eminent domain proceedings is helpful. "The eminent domain statute is designed to provide a speedy and fair assessment of damages." *Gulf Energy Pipeline Co. v. Garcia*,

884 S.W.2d 821, 823 (Tex. App.—San Antonio 1994, orig. proceeding); *see In re State*, 85 S.W.3d 871, 876 (Tex. App.—Tyler 2002, orig. proceeding) (op. on reh'g). Under current law, the eminent domain process occurs in two phases. *Blasingame v. Krueger*, 800 S.W.2d 391, 392 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding). The first phase is administrative in nature. After an eminent domain proceeding is filed in a trial court, Tex. Prop. Code Ann. § 21.012 (West Supp. 2009), the trial court appoints three special commissioners who "assess the damages of the owner of the property being condemned," *id.* § 21.014 (West 2004); *see id.* § 21.042 (West Supp. 2009), and "file an award which, in their opinion, reflects the value of the sought-after land," *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 242 (Tex. 1984). The administrative phase is designed to provide "a means to quickly award damages . . . without the delays that occur in court proceedings." *In re State*, 85 S.W.3d at 876; *see also PR Investments & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 478 (Tex. 2008) (explaining that administrative phase provides parties with opportunity to present their case in "streamlined fashion and to resolve their differences" without "the burdens of a trial"). In other words, the "purpose of the administrative phase is to provide the parties an opportunity for a prompt resolution of the case with a minimum of expense." *City of McKinney v. Eldorado Park, Ltd.*, 206 S.W.3d 185, 196 (Tex. App.—Eastland 2006, pet. denied). During this phase, the trial court only has "jurisdiction to appoint the commissioners, receive their opinion as to value, and render judgment based upon the commissioners' award." *Gulf Energy Pipeline Co.*, 884 S.W.2d at 822. The trial court has no authority to control the timing of or otherwise interfere with the commissioners' hearing. *Id.* at 823.

If the property owner or the condemning authority is dissatisfied with the commissioners' award, either may file objections to the commissioners' findings in the trial court. Tex. Prop. Code Ann. § 21.018 (West 2004). Once those objections are filed, the second phase goes into effect. *Blasingame*, 800 S.W.2d at 393. In this phase, the commissioners' award is vacated, *id.*, and the administrative phase converts into a normal cause to be tried "in the same manner as other civil causes" in the trial court, Tex. Prop. Code Ann. § 21.018(b). *See also In re State*, 85 S.W.3d at 877 (stating that objections to commissioners' findings entirely wipe out commissioners' award and prohibit any judgment based on that award). It is only after a party files objections that the trial court obtains full jurisdiction over the case. *State v. Blackstock*, 879 S.W.2d 125, 129 (Tex. App.—Houston [14th Dist.] 1994, writ denied). In other words, the trial court does not gain jurisdiction "as a court . . . until the objections" are filed. *Grant v. United Gas Pipe Line Co.*, 457 S.W.2d 315, 319 (Tex. Civ. App.—Corpus Christi 1970, writ ref'd n.r.e.).

## BACKGROUND

In this case, the State sought to acquire property from the LeGuins and initiated an eminent domain proceeding. The State sought the property in order to expand IH-35. After the State initiated the eminent domain proceeding, the trial court appointed three "special commissioners to assess the damages to the owner of the property being condemned," *see* Tex. Prop. Code Ann. § 21.014, and a commissioner's hearing was set for June 2010, *id.* § 21.015 (West 2004).

Prior to the hearing, the LeGuins filed an extensive request for information, asking the State to produce the following types of documents prior to the hearing:

3

- appraisals, value studies, and reports concerning the property to be condemned

- the work file used by an appraiser to make an initial valuation

- design plans and documents showing details of the construction to be conducted on the property

- documents that are relevant to the market value of the property to be condemned and to the value of the remainder of the LeGuins' property before and after the taking

- documents relating to any regulation or rule that affects the value of the LeGuins' property

In filing this request, the LeGuins contended that section 21.024 of the property code allowed the disclosure sought. *See* Tex. Prop. Code Ann. § 21.024 (West Supp. 2009) (covering "Production of Information by Certain Entities Considered Critical Infrastructure"). In response to the request, the State filed various objections arguing that the property code provision does not apply to the State, the Commission, or the Department. Shortly thereafter, the LeGuins filed a motion to compel the release of the information requested.

After the LeGuins filed their motion to compel, a hearing was scheduled with the trial court. Ultimately, the trial court granted the LeGuins' motion to compel and ordered the State to produce the documents requested. After the trial court granted the motion to compel, the State filed this petition for writ of mandamus.

**DISCUSSION**

In its petition, the State asserts that mandamus is proper because "the trial court abused its discretion in ordering the State to produce information pursuant to a request under Texas

4

Property Code section 21.024, and the State has no adequate remedy by appeal." *See In re Columbia Med. Center*, 290 S.W.3d 204, 207 (Tex. 2009) (explaining that mandamus may properly issue to "correct a clear abuse of discretion or the violation of a duty imposed by law" when "an adequate remedy by appeal does not exist").

*There is No Adequate Remedy*

In its petition, the State contends that mandamus is warranted in this case because it will have no adequate remedy if it is required to disclose the information sought. The LeGuins, on the other hand, argue that mandamus is inappropriate because there is an adequate remedy by appeal. Specifically, the LeGuins assert that because the parties to a special commissioners' condemnation proceeding are entitled to a de novo appeal in the trial court, *see* Tex. Prop. Code Ann. § 21.018, the State has an adequate remedy by appeal. Further, the LeGuins insist that the State previously argued that the de novo appeal provided an adequate appellate remedy and should, therefore, be prohibited from taking a contrary position in this case.

In determining whether there is an adequate remedy by appeal, courts "must consider whether mandamus will preserve important substantive and procedural rights from impairment or loss." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). There "is no adequate remedy by appeal" when the "parties are in danger of permanently losing substantial rights." *Gulf Energy Pipeline Co.*, 884 S.W.2d at 824. Further, courts may consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *In re Prudential Ins. Co.*, 148 S.W.3d 124, 136 (Tex. 2004). For example, questions of law that are likely to recur yet elude appellate

review may be addressed through mandamus. *Id.* at 138. In addition, courts may determine whether affording relief through mandamus will "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

The issue presented in this mandamus is a question of law: whether section 21.024 of the property code requires the State to disclose certain information during the administrative portion of an eminent domain proceeding. *See* Tex. Prop. Code Ann. § 21.024. Further, the issue is likely to recur as evidenced by the fact that there is currently another mandamus pending with this Court addressing the very same issue. *See In re State*, No. 03-10-00360-CV. Moreover, the issue bears upon a substantial right. The right to a quick resolution during the administrative phase without the delays that are found in court proceedings has been characterized as "a substantial right," *In re State*, 85 S.W.3d at 876-77, that belongs to entities with the power of eminent domain, *see Gulf Energy Pipeline Co.*, 884 S.W.2d at 824. *See also PR Invs. & Specialty Retailers, Inc.*, 251 S.W.3d at 478 (stating that pretrial settlements through administrative proceedings should be encouraged).

If the State is correct, then section 21.024 does not apply, and requiring the State to submit to extensive discovery requests will interfere with the substantial right to obtain a quick assessment of damages without the expense and delays of traditional court proceedings. Moreover, although the LeGuins insist that the right to a trial de novo in the trial court after the commissioners' hearing provides an adequate remedy for any error, it is not readily apparent how the benefit of a trial de novo could possibly address or undo the deprivation of the right to an unencumbered and expedited administrative hearing. *Cf. In re Jorden*, 249 S.W.3d 416, 419-20 (Tex. 2008) (orig. proceeding) (pertaining to availability of "presuit depositions" and noting that if relators' claim is

6

true and law prohibits those depositions, then scheduled depositions cannot be "untaken"). In other words, the trial court would have no "mechanism by which that right, once lost, [could] be recovered." *See In re State*, 85 S.W.3d at 877.

Similarly, it seems unlikely that this issue would ever be addressed during appellate review. If the State obtains a favorable result in a trial de novo, it will likely be precluded from appealing the trial court's judgment or raising the disclosure issue on appeal. If the State does not obtain a favorable result and seeks to appeal the trial court's judgment, it is not clear on what basis the issue could be addressed because allowing discovery "a little too early" is unlikely to lead to an improper judgment. *See In re Jorden*, 249 S.W.3d at 419. Regardless, even assuming that an appellate court could ever address the issue through a traditional appeal, the right to the quick administrative hearing would still have been lost.

As discussed above, the LeGuins contend that even if mandamus might otherwise be appropriate, this Court should still deny relief because the State has previously asserted that the right to a trial de novo after the commissioners' hearing will cure any error occurring in the commissioners' hearing. As support for their assertions, the LeGuins cite to *Blasingame v. Krueger*. In that case, the property owners sought to subpoena various State employees, but the trial court granted a motion to quash filed by the State. 800 S.W.2d at 392. After the trial court granted the motion, the owners filed a mandamus petition. In their response to the petition, the State argued that mandamus relief should be denied because the ability to have a trial de novo after the commissioners' hearing provided the owners with an adequate remedy by appeal. The appellate court agreed and determined that the trial de novo will allow the owners to obtain the information sought through "'regular' discovery in accordance with the rules of civil procedure." *Id.* at 394.

7

Although the LeGuins correctly point out that the State did previously argue that the right to a de novo trial after a commissioners' hearing provided an adequate remedy, the situation presented in this mandamus proceeding is not analogous to that found in *Blasingame*. *Blasingame* involved an order *prohibiting* the disclosure of information during a commissioners' hearing, but this case involves an order *compelling* the release of information. Any error resulting from the failure to provide information could actually be cured by the disclosure of that information during a subsequent trial, but as discussed above, any potential harm resulting from the improper disclosure of information during a commissioners' hearing cannot be undone through a subsequent trial de novo.[1]

For these reasons, we conclude that the State has no adequate remedy by appeal and that the failure to employ mandamus when this type of substantial right is placed in jeopardy "would

---

[1] In their response, the LeGuins also refer to *In re State*, 65 S.W.3d 383 (Tex. App.—Tyler 2002, orig. proceeding), as support for their assertion that mandamus is not appropriate in this case. In that case, the special commissioners ordered the State to produce appraisal reports and records, and the trial court affirmed that request. *Id.* at 384. The State filed a mandamus, and relying on *Blasingame*, the appellate court determined that the right to a trial de novo after the commissioners' hearing afforded the State an adequate remedy. *Id.* at 387-88.

In light of the preceding case, the LeGuins contend that we should adopt the reasoning employed by the Tyler Court of Appeals and conclude that the State in the present case has an adequate remedy by appeal. In reaching its conclusion, the Tyler court also noted that its determination that mandamus was not warranted was supported by the fact that there was "no contention that the actions of the trial court have caused or will cause irreparable harm." *Id.* at 388. In the present case, however, the State has alleged that being forced to disclose the information sought will deprive the State of its substantial right to an expedited hearing during the administrative phase of a condemnation proceeding. Even assuming that the Tyler court's opinion could be read as standing for the proposition that mandamus relief is not available to resolve any discovery disputes arising during the administrative phase, we would not be bound by that holding or by the analysis employed by the Tyler court.

vitiate and render illusory the right to a rapid, inexpensive alternative to traditional litigation." *Gulf Energy Pipeline Co.*, 884 S.W.2d at 824; *see In re Prudential Ins. Co.*, 148 S.W.3d at 138.

*The Trial Court Abused its Discretion*

Having determined that there is no adequate remedy available to the State if the State's assertions are correct, we must now determine whether the trial court abused its discretion by ordering the State to disclose the information sought by the LeGuins under section 21.024 of the property code. *See* Tex. Prop. Code Ann. § 21.024. A court is said to abuse its discretion when it acts "without reference to any guiding rules and principles," *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010), or acts in "an arbitrary or unreasonable manner," *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Regarding factual determinations, appellate courts apply a deferential standard and will only disturb the trial court's determination if "it is shown to be arbitrary and unreasonable." *In re Bustamante*, 104 S.W.3d 704, 705 (Tex. App.—El Paso 2003, orig. proceeding). However, regarding the resolution of legal questions, appellate courts are "much less deferential" because a trial court has no discretion to determine what the law is. *Id.* Accordingly, a trial court "abuses its discretion" when it fails to analyze or correctly apply the law. *Id.*

In its petition, the State asserts that section 21.024 does not apply to the State, the Commission, or the Department. The issue presented involves a question of statutory construction. When presented with an issue of statutory construction, the chief concern "is to ascertain and give effect to the Legislature's intent." *Klein v. Hernandez*, 315 S.W.3d 1, 3-4 (Tex. 2010). In making this determination, courts should look to the plain meaning of the words used in the statute. *See*

9

*Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000). We presume that every word was deliberately chosen and that excluded words were left out on purpose. *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). We also "presume that the Legislature intended all provisions of a statute to be effective, and that it intended a just and reasonable result." *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010). When determining legislative intent, the entire act, not isolated portions, must be considered. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). We may also consider the "object sought to be attained" by enacting the statute, the "circumstances under which the statute was enacted," and the "consequences of a particular construction." Tex. Gov't Code Ann. § 311.023 (West 2005).

As a preliminary matter, we note as described above that the administrative phase was originally designed to provide a quick, inexpensive, and unencumbered mechanism by which the damages to a landowner may be determined. *See In re State*, 85 S.W.3d at 876; *Gulf Energy Pipeline Co.*, 884 S.W.2d at 824. We also note that the LeGuins' assertions are in direct conflict with that statutory scheme. *See Gulf Energy Pipeline Co.*, 884 S.W.2d at 822-23. In fact, despite the legislative mandate denying the trial court an active role in the administrative phase of an eminent domain proceeding and requiring that commissioners set and conduct a hearing "promptly" and "at the earliest practical time," *see* Tex. Prop. Code Ann. § 21.015, the LeGuins essentially ask this Court to conclude that a large proportion of (if not all) eminent domain proceedings initiated by a governmental entity are subject to the delays inherent in scheduling hearings before a trial court, *see Peak Pipeline Corp. v. Norton*, 629 S.W.2d 185, 187 (Tex. App.—Tyler 1982, no writ) (stating that eminent domain "statutory authority and the legislative intent from which it emanates,

10

contemplates the utilization of special commissioners to accomplish the goal of a speedy and fair assessment of damages"); *City of Houston v. Plantation Land Co.*, 440 S.W.2d 691, 695 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (explaining that legislature intended to establish "expeditious procedure"). Furthermore, construing section 21.024 as applying to the administrative phase would necessarily undermine the intent of the legislature by adding expense to the administrative phase.[2] While the legislature is free to override its prior intent through subsequent enactments, the breadth of the departure suggested by the LeGuins in the absence of language expressly disavowing the prior intent gives us pause.

Moreover, construing section 21.024 as applying to the State is inconsistent with the very language of that provision. That provision requires certain condemning authorities to release information "related to the taking of [a] person's private property by the entity through the use of eminent domain." *Id.* § 21.024(a). Further, the provision explains that only "an entity which is

---

[2] The LeGuins assert that disclosure during the administrative hearing would "level the playing field by giving the landowner access to relevant information going into the administrative hearing, but will also increase the chances that those hearings will yield a quick and fair resolution." Further, the LeGuins insist that construing section 21.024 as not applying to the State will not encourage pretrial settlements and will force landowners to choose between "settling without the benefit of information about their property in the State's possession or, alternatively, proceeding to trial and spending more money to discover" the information relied on by the State. *See* Tex. Prop. Code Ann. § 21.024 (West Supp. 2009).

Although releasing the requested information during the administrative phase would provide landowners with more information prior to trial, the release would be contrary to the State's substantial right to a quick and inexpensive resolution during the administrative phase. *See In re State*, 85 S.W.3d 871, 876-77 (Tex. App.—Tyler 2002, orig. proceeding) (op. on reh'g). In fact, it might effectively negate the distinction between the administrative phase and a trial as it relates to costs and burdens imposed on the State. Moreover, delaying the release of the requested information until after the conclusion of the administrative portion imposes no additional burdens on landowners that are not present in other eminent domain contexts.

11

considered *critical infrastructure* and which is *authorized by law* to take private property through the use of eminent domain is required to produce" the information described above. *Id.* (emphases added). When describing what is meant by the phrase "critical infrastructure," the code states that "[a] utility, a common carrier, or a transporter of oil, gas, or the products of oil or gas is considered to be within the definition of critical infrastructure under Section 421.001, Government Code." *Id.* The government code specifies that "'critical infrastructure' includes all public or private *assets, systems, and functions* vital to the security, governance, public health and safety, economy, or morale of the state or the nation." Tex. Gov't Code Ann. § 421.001(2) (West 2005) (emphasis added).

At first glance, the State and the Commission and the Department as governmental agencies do not seem to fall under the government code's definition of "critical infrastructure" because they do not seem to readily qualify as "assets, systems, [or] functions." *See* Tex. Gov't Code Ann. § 421.001(2). While they unquestionably may physically own, create, or maintain "assets, systems, and functions" that would qualify as critical infrastructure, that does not necessarily compel a conclusion that they themselves are critical infrastructure. That determination also seems to comport with the commonly accepted definition of "infrastructure" as "the system of public works of a country, state, or region." *See Merriam-Webster* available at www.merriam-webster.com. Furthermore, the government code provision defining "critical infrastructure" has a separate and distinct definition for "agency," which would seem to more readily apply to the entities at issue. *Id.*

12

§ 421.001(1).[3] Moreover, it is worth noting that nothing in the definition of "agency" indicates that agencies are considered "critical infrastructure." *Id.*

This conclusion is supported by a later subsection in section 21.024, which references a government code provision applying only to non-governmental entities. Subsection 21.024(i) states that section 552.0037 of the government code "does not apply in relation to those entities described in Subsection(a)," which are subject to the disclosure requirements at issue. Tex. Prop. Code Ann. § 21.024(a), (i). Section 552.0037 of the government code is part of the Public Information Act and specifies that non-governmental entities with the power to use "eminent domain" are subject to the Act. Tex. Gov't Code Ann. § 552.0037 (West Supp. 2009). Given that the government code provision applies only to non-governmental entities and that the property code exempts *all* of the entities described in subsection 21.024(a) from the requirements imposed by the

---

[3] In their response, the LeGuins insist that section 21.024 of the property code applies when the condemning authority is "an entity," when "the entity is 'considered critical infrastructure,'" and when "the entity has condemnation power to take private property." *See* Tex. Prop. Code Ann. § 21.024. In light of this characterization, the LeGuins insist that the State, the Commission, and the Department all qualify under section 21.024 of the property code. For the reasons discussed above, we disagree with their interpretation of section 21.024.

The LeGuins also contend that in enacting section 21.024, the legislature could not have reasonably intended to treat governmental and non-governmental entities differently. In other words, the LeGuins insist that the legislature could not have desired to grant landowners the ability to seek information from a condemning authority "considered critical infrastructure" but not bestow that same right to landowners seeking information from the State. When confronted with an issue of statutory construction, we are simply charged with ascertaining what the legislature intended by enacting a statute; we are not tasked with determining whether the legislature correctly resolved the various competing public interests. Resolution of public interests is a task uniquely suited for the legislature. Although we need not determine whether the legislature's decision to distinguish between governmental and non-governmental entities in this context appropriately settles the various conflicting interests, we do note that there could be compelling reasons for limiting the disclosure requirements to non-governmental entities that have been given the power of eminent domain.

13

government code provision, the most logical resolution of those statutes leads to the conclusion that subsection 21.024(a) covers non-governmental entities and, therefore, does not apply to the State, the Commission, or the Department.[4] This conclusion is further supported by the fact that when the

<hr />

[4] The LeGuins argue that subsection 21.024(i) cannot support a conclusion that subsection 21.024(a) does not apply to the State, the Commission, or the Department. *See* Tex. Prop. Code Ann. § 21.024(a), (i). Essentially, they assert that subsection 21.024(a) applies to both governmental and non-governmental entities and that subsection 21.024(i) simply eliminates the possibility that a non-governmental entity will attempt to use an exception to disclosure under the Public Information Act as a basis for refusing to disclose the information required by section 21.024. *See* Tex. Gov't Code Ann. § 552.0037 (West Supp. 2009) (explaining that non-governmental entities with power of eminent domain are subject to Act). Finally, they argue that section 21.024 cannot apply only to non-governmental entities because it unquestionably applies to utilities and common carriers, Tex. Prop. Code Ann. § 21.024(a), some of which are governmental entities.

However, the language of subsection 21.024(i) undermines their first assertion. The language of that subsection does not exempt just non-governmental entities; rather, it exempts all of the entities described in subsection 21.024(a). *Id.* § 21.024(a); *see Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000) (explaining that courts analyze words actually used). Had the legislature intended subsection 21.024(i) to apply only to non-governmental entities, it could have easily said so. *See USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied) (stating that courts must presume that words chosen and omitted were done so purposely). Moreover, were we to adopt the construction offered by the LeGuins, then we must conclude that the legislature was aware of the fact that 552.0037 of the government code does not address or apply to governmental entities but chose to exempt all entities (governmental and non-governmental) from the burdens and exemptions imposed by section 552.0037. *See City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010) (requiring courts to presume that legislature intended reasonable result).

Regarding the assertion by the LeGuins that section 21.024 must apply to governmental and non-governmental entities because it specifically covers entities (e.g., utilities and common carriers) that can be governmental in nature, we are not confronted with making that determination here. Rather, we are asked to determine whether section 21.024 requires disclosure by the State, the Department, and the Commission. *See Hagen v. Hagen*, 282 S.W.3d 899, 901-02 (Tex. 2009) (explaining that courts have no jurisdiction to issue advisory opinions). Even assuming that the LeGuins are correct when they state that common carriers and utilities can be governmental entities, that concession would not result in a determination that the definition of critical infrastructure includes the State, the Department, or the Commission. To the contrary, the legislature could have simply chosen to include certain types of governmental entities in the definition of "critical infrastructure" for the purposes of eminent domain.

14

legislature previously decided to impose disclosure requirements on governmental entities in the eminent domain context, it explicitly used the phrase "governmental entity." *See* Tex. Prop. Code Ann. § 21.0111 (West 2004) (requiring "governmental entity . . . that wants to acquire real property" through eminent domain to disclose "existing appraisal reports" at time offer is made and before administrative hearing). Had the legislature intended for section 21.024 to also apply to governmental entities, it could have easily said so.

Even assuming that the definition of "critical infrastructure" can be read broadly enough to include the State, the Department, the Commission, and other governmental entities[5] when those entities are exercising eminent domain for the purpose of creating or maintaining critical infrastructure such as a highway, section 21.024 provides a significant limitation to the types of critical-infrastructure entities that are required to disclose information. Section 21.024 applies only to those entities that are "*authorized by law* to take private property through the use of eminent domain." Tex. Prop. Code Ann. § 21.024(a) (emphasis added). The State is not authorized by law to engage in eminent domain actions; rather, the State has an "inherent sovereign power of eminent

---

[5] When asserting that section 21.024 applies to governmental entities, the LeGuins refer to three cases that list section 21.024 as well as others when describing the statutory condemnation scheme. *See Alweine v. City of Houston*, 309 S.W.3d 771, 774 n.2 (Tex. App.—Houston [14th Dist.] 2010, pet. filed) (listing sections 21.001 to 21.065 of property code as governing statutory scheme); *City of Dallas v. Pacifico Partners, Ltd.*, 289 S.W.3d 371, 374 n.1 (Tex. App.—Dallas 2009, no pet.) (identifying article I, section 17 of constitution and sections 21.012 to 21.024); *AVM-HOU, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574, 578 (Tex. App.—Austin 2008, no pet.) (stating that eminent domain action is "statutory cause of action" and citing sections 21.011 to 21.024 of property code). However, none of those cases explicitly state that section 21.024 requires disclosure by governmental entities and certainly does not say that disclosure is required during the administrative portion of a condemnation proceeding. In fact, when describing what statutes govern the adminstrative hearing and subsequent trial de novo, the *Pacifico Partners* court made no mention of section 21.024 and instead cited only to sections 21.012 through 21.018 of the property code. 289 S.W.3d at 374.

15

domain." *See City of Carrollton v. Singer*, 232 S.W.3d 790, 796 (Tex. App.—Fort Worth 2007, pet. denied). The Texas Constitution may limit the manner in which the power may be exercised, but it does not bestow that power onto the State. *Id.*; *Whittington v. City of Austin*, 174 S.W.3d 889, 898 (Tex. App.—Austin 2005, pet. denied); *see also* Tex. Const. art. I, § 17 (imposing requirement that property owner be given "adequate compensation" and that taking be done for "public use"). Similarly, the property code does not grant the power of eminent domain but instead provides "the procedure for instituting an eminent domain proceeding." *Singer*, 232 S.W.3d at 797; *see* Tex. Transp. Code Ann. § 224.004(d) (West 1999) (explaining that property code "governs procedure for the eminent domain proceeding").

Although the State has the inherent power to engage in eminent domain, the State uses this power by delegating its authority to the Department and other agencies. *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 189 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (explaining that in eminent domain proceeding, State acts "through the Texas Department of Transportation"). In other words, when the Department engages in eminent domain, it is exercising the State's inherent sovereign right rather than employing a right "authorized by law." Because the Commission "governs" the Department, Tex. Transp. Code Ann. § 201.201 (West 1999), it is similarly empowered to engage in eminent domain in "the name of the [S]tate" and on "behalf of the [S]tate," Tex. Transp. Code Ann. §§ 203.051 (West 1999), 224.004 (West 1999).

In light of the fact that the State, the Department, and the Commission are not entities that have been "authorized by law" to engage in eminent domain actions but are instead entities that either have or express an inherent, sovereign power of eminent domain, we must conclude that they

16

are not governed by the requirements of section 21.024 of the property code. Because the trial court determined that section 21.024 applied and required the discosures sought by the LeGuins, we conclude that the trial court abused its discretion. *See In re Bustamante*, 104 S.W.3d at 705 (explaining that trial courts abuse their discretion when they incorrectly analyze or apply governing law).

## CONCLUSION

Having concluded that the district court abused its discretion by determining that section 21.024 applied and having determined that the State does not have an adequate remedy, we conditionally grant the State's petition for writ of mandamus and direct the trial court to vacate its order requiring disclosure of the five categories of documents sought by the LeGuins. We are confident that the trial court will comply, and our writ will only issue if it does not.[6]

_____

David Puryear,  Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Filed:  November 12, 2010

_____

[6] In their response, the LeGuins assert that the State improperly relies on and attached to its petition part of the legislative history for section 21.024 and various documents ostensibly explaining what is meant by the term "critical infrastructure." Further, the LeGuins filed a motion to strike the allegedly improper documents from the State's appendix to its petition and any portion of the State's petition "citing or relying" on the documents. In reaching our result, we do not rely on the documents that the LeGuins object to. *See* Tex. Gov't Code Ann. § 311.023(3) (West 2005) (authorizing courts to consider statute's legislative history when attempting to engage in statutory construction). Accordingly, we dismiss the motion to strike as moot.